446 P.2d 940

**STATE of Arizona, Appellee,**
**v.**
**Douglas Neall PINE, Appellant.**
**No. 2 CA–CR 117.**

Court of Appeals of Arizona.
Nov. 13, 1968.

Rehearing Denied Dec. 10, 1968.
Review Denied Jan. 14, 1969.

---

Gary K. Nelson, Atty. Gen., Darrell F. Smith, former Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

William H. Tinney, Jr., Tucson, for appellant.

KRUCKER, Judge.

Information was filed against the defendant, Douglas Neall Pine, on October 17, 1966 charging the crime of burglary, two counts. The trial before a jury in July, 1967 resulted in verdicts of guilty on both counts, and on July 24, 1967 a judgment of guilty was entered, imposition of sentence was suspended for a period of five years, and the defendant placed on probation.

The major grounds for this appeal arise under the search and seizure provisions of the Fourth Amendment of the U. S. Constitution and the Privilege Against Self-Incrimination under the Fifth Amendment of the U. S. Constitution, as applied to the states under the aegis of the 14th Amendment to the U. S. Constitution. An additional ground for appeal arises out of the failure of the trial court to grant a mistrial because of allegedly prejudicial misconduct of a witness before the jury.

Construing the record most favorably to the State, State v. Hassman, 101 Ariz. 583, 422 P.2d 699 (1967), the relevant facts and circumstances surrounding the constitutional grounds for this appeal are as follows. Two detectives from the Tucson Police Department, armed with what

they believed to be a valid search warrant, went to the defendant's apartment with purpose and intent of searching that premises and questioning the defendant in connection with two burglaries. As they approached the apartment, the main door of the apartment stood open, but an outer screen door was closed. One of the detectives knocked on the door, and in response thereto, a young woman appeared. The detectives identified themselves as police officers, and the screen door was opened, either by the young woman or by one of the detectives, for the purpose of showing the officers' identification to her. The officers asked if defendant were there. The young woman went to get the defendant, who was in another room in the apartment, and the officer, from the doorway, looked into the room, the screen door having remained open during the conversation with the young woman. At this time, and from this position, the officer observed a large aquarium and several small aquariums, and, because of a description given to the officer by the owner of one of the burglarized premises, the officer believed that the large aquarium had been taken in connection with one of the burglaries.

At this time the defendant appeared, and the officers identified themselves to him, told him they had a warrant to search his apartment, and informed him that they were investigating two burglaries and that they would like to speak with him in connection with them. The defendant stated that he knew why the officers were there, and he requested that they conduct their business outside the apartment, out of the presence of the young woman.

The defendant and the two detectives then proceeded to the sidewalk in front of the defendant's apartment, and at this time the defendant was served with the search warrant and "Miranda warnings" were given to him. The defendant, while outside the house with the officers, admitted that he had committed the two burglaries. Defendant gave the officers complete details regarding both of these burglaries, and when the conversation was finished the defendant and the two officers returned to the house, the young woman in the meantime having departed, and while inside the house the defendant went about the house pointing out to the officers the various items which he had taken in connection with the burglaries.

When this was done, one of the officers called the owners of the burglarized premises, and the respective owners later appeared in the presence of the defendant at his apartment and identified the items pointed out by the defendant as property taken from their premises at the time of the burglaries. Both owners at this time had conversations with the defendant in the course of which he again admitted the burglaries, and arrangements were made between the defendant and the respective owners to pay for the property taken and for damages done to the respective premises as a result of each burglary.

In addition to the owners of the property, a police photographer was called, and during this same period photographs were taken of the exterior and the interior of the defendant's apartment, the interior photographs depicting various articles which were taken in the course of the burglaries.

When all of the foregoing transactions were completed, the defendant was taken to the city jail for booking, and then to the detective division where a written confession was taken by a stenographer.

Prior to the trial and again at the commencement of the trial, the defendant moved to suppress all of the information and evidence and admissions by the defendant which were obtained subsequent to the time that the screen door was opened in order that the detectives could exhibit their identification to the young woman who answered the door. As a basis for the motion to suppress, defendant asserted the invalidity of the search warrant, claiming that it was issued upon improper affidavit. The pre-trial motion to suppress was denied without explanation. The motion to

suppress at the commencement of the trial was denied, and the trial court, although clearly of the opinion that the warrant was invalid, declined to rule on the warrant's validity, it being of the opinion that the information and evidence sought to be suppressed was obtained without the use of the search warrant.[1]

The first matter we shall consider concerns the actions of the police officer while standing in the doorway of the defendant's apartment, and whether what the officers saw at that time and place was the fruit of an unreasonable search or seizure.

The officer knocked on the door, a young woman answered the door, the screen door was opened for the purpose of showing identification to her, and at this time the officer looked into the room, there observing a large fish tank the appearance of which corresponded to a description of property taken in the burglaries. The trial court ruled that the foregoing sequence of events did not constitute an unreasonable search, and that the observations of the officer were made without the use of the search warrant.

█ We are constrained to agree with the ruling of the trial court. Aside from the fact that the officers had the search warrant in their possession at this time, there is nothing whatsoever to indicate that the presence of the officers in the doorway was secured by use of the search warrant. It is not enough that the officers had what they believed to be a valid warrant and that they believed the warrant gave them the power to search the apartment, and where there is nothing in the record to

indicate that the officers made any use of the warrant at this time, then the admissibility of the officer's observations from the doorway under the doctrine of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) should be determined without further reference to the search warrant.

█ The Fourth Amendment to the U. S. Constitution does not prohibit all searches and seizures, but only those that are unreasonable. State v. Baca, 1 Ariz.App. 16, 398 P.2d 924 (1965).

█ Of the many possible situations recognized by the courts as not constituting unreasonable searches, the one most appropriate to the case before us appears to be the "open view doctrine." Under this doctrine a peace officer who has reached a location by lawful means and who, from this location, can, by the mere act of looking, observe what he believes to be contraband, is "* * * not required to close (his) eyes and need not walk out and leave the article where (he) saw it." Davis v. United States, 327 F.2d 301, 305 (9 Cir., 1964). The entry of the officer in this case, to the extent that there was an entry, and his placing himself in the doorway of the defendant's apartment, was not an unlawful intrusion. The outer screen door was opened without objection, and the presence of the officer in the doorway was likewise achieved and maintained without objection. See, Davis v. United States, supra.

It was at this time, and from this location, that the officer observed the aforesaid fish tank, and we are of the opinion

1. "THE COURT: Well I don't know whether [the magistrate did examine him under oath] or not, but there was no evidence before me on that. The only thing that is before me is the affidavit, the warrant, the motion to suppress. It is my conclusion for what it is worth that the warrant under the Aguilar case was defective. Now because the warrant was issued pursuant to an affidavit that was nothing more than conclusions, I agree with counsel.

\* \* \* \* \*

"MR. PATCHELL [for the State]: Your honor, if that is your conclusion at that point may I put on further evidence?

"THE COURT: No, because I still don't see that the search or seizure or the statement of the defendant was obtained as a result of this unlawful, illegal warrant. I don't think that the search or the questioning was unreasonable under the circumstances and I'm going to deny the motion."

that this observation did not constitute an unreasonable search.

It is noteworthy that even after the officer observed what he believed to be stolen property, he did not seize it or utilize it or even make reference to it, and instead he continued with his originally stated purpose, that being to talk to the defendant with regard to the burglaries.

■■■ We move next to defendant's proposition that his statements and admissions made during the course of the conversation with the police officers were coerced by virtue of the fact that the police officers presented him with an invalid search warrant. We are unable to discern between the possibilities of coercion which might be produced by a valid search warrant and those which might be produced as a result of an invalid search warrant, believed by the relator to be valid. If a person who makes a confession or an admission claims to have been coerced, then the real issue is his state of mind, Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and not whether the means by which he is said to be coerced possess all those qualities which the person making the confession or admission believes them to possess. The record, before the court alone and before the jury, shows that before the defendant made any admissions or before he confessed he was served with the search warrant. This would be the fact to establish coercion, if any, and a confession or admission, if coerced by the service of this warrant, should be inadmissible regardless of whether the warrant was valid or not. In this case, as in most, coercion is a question of fact, and the constitutional procedures to determine voluntariness were followed by the trial court. We find nothing in the record to indicate that the findings of the trial court, and the findings of the jury that there was no coercion, were erroneous.

The next proposition cited as error by the defendant is the failure of the trial court to give an instruction which reads as follows:

"The search warrant and underlying affidavit were inadequate and because they were inadequate as a matter of law were of no effect, illegal and void."

Defendant claims that this instruction should have been given to enable the jury to pass on the voluntariness of the defendant's confession.

■■ As we have previously indicated, it was not the validity of the search warrant which would determine voluntariness, or its antithesis, coercion; defendant's state of mind, and evidence bearing thereon, are what the jury should consider in determining the voluntariness of the confession. Coercion will not become otherwise depending on the validity or the efficiency of the means used to produce it, and, likewise, an absence of coercion will never become coercion by a disclosure that the means asserted as the basis of the coercion lacked the physical or legal capabilities which they appeared to have.

We shall next consider the assertion by the defendant that he was arrested without probable cause, that his apartment was then searched incident to his allegedly unlawful arrest, and that the trial court erred in admitting the evidence obtained as a result of this search since, the arrest being unlawful, the search incident thereto was likewise unlawful.

The only evidence which specifically fixes the time of the defendant's arrest is to be found in the transcript of the proceedings in connection with defendant's motion to suppress which was made some nine months before the time of the trial. The testimony in this transcript relates that defendant was placed under arrest after he had confessed to both of the burglaries during the course of his conversations with the detectives outside his apartment, and that after the arrest the defendant and detectives waited for the young woman to leave and then entered the apartment, at which time the defendant identified the stolen property which was seized by the officers.

"A peace officer may, without a warrant, arrest a person:

\* \* \* \* \* \*

3. When a felony has in fact been committed, and he has probable cause to believe that the person to be arrested has committed it.

4. When he has probable cause to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it." A.R.S. § 13–1403, 5 A.R.S. (as amended)

\* \* \* \* \* \*

■ An arrest without a warrant must be based upon probable cause, and probable cause will exist where the facts and circumstances within the knowledge of the arresting officers are sufficient to warrant a man of reasonable caution in the belief that an offense had been committed and that the defendants had committed it. State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967).

■ We are of the opinion that where an officer knows that a burglary has been committed, and where the officer lawfully observes property in the defendant's apartment which fits the description of property taken in a burglary, and where the defendant, without coercion, confesses that he committed the burglaries under investigation, then an arrest by an officer possessed of such information is lawful.

■ There has been no claim by the defendant that the search of the apartment subsequent to his arrest was not an incident to that arrest, the grounds being set forth as a basis for excluding the results of that search being that the arrest itself was unlawful. Inasmuch as we have determined that the arrest was lawful, the evidence obtained as a result of the subsequent search was not the result of the unreasonable search or seizure, being incident to the arrest. It does not violate the Fourth Amendment to search, in connection with a lawful arrest, and without a search warrant, the premises where the arrest was made, where these premises were under the control of the person arrested. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

The final constitutional issue presented by defendant asserts that the allegedly invalid search warrant was a "poisonous tree", and that all evidence obtained as the result of the use of this warrant was, therefore, inadmissible under the doctrine of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ As our discussion of the previous questions presented indicates, the evidence complained of in this case did not result from the use of the search warrant; its validity or invalidity was not determined below and will not be determined in this court. If we assume, without granting, that the search warrant did constitute a "poisonous tree", we cannot see that this "poisonous tree" has borne any fruit, and in the absence of such fruit, the doctrine announced in *Wong Sun,* supra, has no application.

The last matter we shall consider in this appeal is defendant's claim of error on the part of the trial court in refusing to grant a mistrial, based on a statement made by one of the witnesses in the presence of the jury.

Defendant was charged with the commission of two separate burglaries, occurring approximately three months apart, and he was given a separate trial for each offense. In the course of the first trial, one of the arresting officers was testifying as to statements made by the defendant during his conversations with the officer outside the defendant's home. The officer testified that the defendant told him that he (the defendant) had committed the *burglaries,* and at this point, counsel for defendant asked that the jury be excused and immediately moved for a mistrial. The asserted grounds for the mistrial were that the officer, by using the word "burglaries" in the plural form had introduced evidence of other offenses having no relation to the crime for which defendant was then being prosecuted, and that the result of the use of this term was

prejudice to the defendant such as would warrant a granting of a mistrial.

■ In Arizona the principle is well established that it is error to admit evidence that the accused has committed other offenses entirely distinct and independent of that for which he was on trial. State v. Thomas, 71 Ariz. 423, 229 P.2d 246 (1951).

■ We are of the opinion that the testimony of the witness, in using the term "burglaries", was not error. The witness had just finished testifying to the events up to the point where the young lady departed from the doorway to get the defendant, and the witness was asked: "Q. What happened then?" The witness's answer to this consisted of a narration of events starting at the time that the defendant appeared in the frontroom and leading outside the house to the place where the defendant was advised of his rights, and it was at this time that the witness testified that the defendant admitted committing the burglaries.

It must have been well known to both the defendant and his attorney that the defendant, during the sequence of events being described by the witness, had confessed to both of the burglaries. In spite of this, the witness was permitted to testify in narrative form for some 18 lines of testimony before the term "burglaries" was used. We feel that the defendant, if he desired to strictly limit the testimony of the witness to matters relating only to the crime then being tried, was required at least to request that the narrative testimony be discontinued, and that the witness be allowed to respond only to specific questions to which a proper objection might have been made. Defendant made no such request.

■ Outside the presence of the jury the witness testified that in using the term "burglaries" he was relating the exact term used by the defendant at that time. It is fundamental to our system of justice that the witness who testifies under oath be permitted, and indeed required, to speak truthfully in the giving of his testimony. So valued is this concept by our society that one who testifies without at least a belief in the truth of his testimony is guilty of a felony. See, A.R.S. § 13–561, et seq. This witness was asked to describe what happened, and we are of the opinion that his attempts to do so with exactitude, when he is permitted, without objection or request, to testify in a narrative form, should not be said to form the basis of error.

In addition to the foregoing, we are further of the opinion that the refusal to grant a mistrial was proper, for the reason that the trial court was justified in its finding that use of the term "burglaries" did not result in prejudice to the defendant.

■ The test in this State for determining the existence of prejudice has been announced by our Supreme Court as follows:

"* * * This Court has held the test to be: had the error not been committed was there reasonable probability that the verdict might have been different. * * *" State v. Ybarra, 97 Ariz. 200, 202, 398 P.2d 905, 907 (1965)

That case stated that the "change in outcome" test is dependent on an examination of the entire record. We have done so, and the use of the term "burglaries" is the sole reference to any possibility that the defendant had been charged with or had committed another offense. The trial court summarized its reasoning as follows:

"* * * The motion for mistrial is denied. It appeared to me that if the witness has said burglaries, plural, the intonation of his voice was such that I didn't catch it, and I'm sure that had it been emphasized in any way it would have been apparent to me, and certainly under the circumstances that the testimony was given, I doubt very seriously that it's going to have any effect or import on the jury. As Mr. Patchell pointed out, I think that it is not unreasonable to assume that the jurors are going to, if they consider the word burglaries at all, they're going to consider it as the burglary of the Red Barn Pet Shop as more than one item was taken. * * *"

· We are in agreement with the conclusions of the trial court, and we find that the use of the term "burglaries", in the context of the testimony, and considering the entire record, did not result in any prejudice to the defendant.

Having found no error below, it is the opinion of this court that the judgment shall be affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.