**Donald Michael NORDSKOG, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent-Appellee.**

No. 75–4168.

United States Court of Appeals, Fifth Circuit.

Jan. 27, 1977.

Don A. Lynn, Miami, Fla. (Court appointed), for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Miami, Fla., Basil S. Diamond, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before MORGAN and GEE, Circuit Judges, and HUNTER,* District Judge.

* Senior District Judge for the Western District of Louisiana, sitting by designation.

EDWIN F. HUNTER, Jr., District Judge:

Nordskog was convicted by a Florida jury of breaking and entering a dwelling house with intent to commit a felony and rape. His conviction was affirmed by the Florida Court of Appeals on August 16, 1974. *Nordskog v. State*, 299 So.2d 183. An application for a writ of certiorari to the Supreme Court of Florida was denied, 312 So.2d 746. He then brought this petition for a writ of habeas corpus. The district judge dismissed the petition. We affirm.

At approximately 4:45 a. m., April 20, 1972, prosecutrix was raped in the bedroom of her home in Lantana, Florida. The assailant, after surreptitiously entering the victim's home by "popping" a back door screen, entered the victim's bedroom, awakened her, and demanded she submit to avoid being harmed. The assailant concealed his identity by wearing a well-worn sheet or blanket over his head from above the eyebrows to beneath his chin. The assailant was dressed in a colored shirt with pin stripes, dark trousers which the victim suspected were dungarees because of the fabric and the noise of the zipper, and shoes that made no noise when the assailant walked. The assailant did not remove his clothes and had a strong, heavy, "beery" smell on his person. The rapist completed the sexual assault in five or six minutes and then immediately departed the victim's premises.

Immediately thereafter, the victim telephoned the police who arrived within minutes. Thereafter, Sergeant Brannam of the Lantana Police Department, detected tennis shoe prints leading away from the victim's home as indicated by the small diamond shape sole imprints left in the soft sand surrounding the victim's home. Officer Brannam and his fellow deputies followed the track of foot prints which ended at the home of Roy Shuler, some two and one-half blocks from the prosecutrix's house. After knocking on the front door and receiving no response, Officer Brannam "peered" in a window of the residence and saw a person lying on the mattress in the bedroom, as well as a pair of dungarees that were damp or wet to the knee and a pair of wet tennis shoes. The police officers at that point returned to the front door and knocked again, but again received no response.

Next, the deputies went to the rear of the house to a screened-in porch and knocked upon the open sliding glass door. From this position, Deputy Brannam looked south directly through a small dining room into the bedroom where he had a very clear view of a sole of a tennis shoe which appeared to be the same type and description that he had followed for 2½ blocks from the victim's home.

Shortly thereafter, appellant came to the back door, the deputies identified themselves and told him they were investigating an incident in the neighborhood and wanted to know if the appellant had heard anyone walking through his yard in the early morning hours. Appellant invited the deputies into the house. While standing in the dining room, Deputy Brannam again noticed the sole of the tennis shoe in the bedroom and told his associate, Captain Haley, "This is the shoe we have been following." From this vantage point, Detective Brannam also saw a pair of dungarees and a pin striped shirt and a pair of underwear lying in close proximity to the tennis shoes. Thereafter, upon appellant's return from the kitchen he was asked by Sergeant Brannam whether the clothing, including the tennis shoes, dungarees, shirt and underwear lying on the bedroom floor belonged to him. Appellant answered in the affirmative. At this point, Sergeant Brannam was instructed by Captain Haley to place appellant under arrest and to advise him of his constitutional rights. Subsequent to the arrest, the tennis shoes, dungarees, shirt and pair of underwear were seized.

The shirt and shoes were received as evidence. The prosecution was also permitted to introduce evidence of a previous rape by appellant in Minnesota.

Nordskog's first complaint is that the agents' peering into the bedroom window and the back door of his residence constituted a violation of his right to privacy. The Fourth Amendment embodies a

comprehensive right of privacy against unwarranted governmental intrusions. This court has long ago so stated. *Brock v. United States*, 223 F.2d 681 (5th Cir. 1955); *Texas v. Gonzales*, 388 F.2d 145 (5th Cir. 1968). But, it is equally clear that all governmental intrusions do not constitute an unwarranted governmental interference with the right to privacy. *Foster v. United States*, 296 F.2d 65 (5th Cir. 1965); *United States v. Knight*, 451 F.2d 275 (5th Cir. 1971). The main consideration is to determine whether the observing officer had "a right to be in the position to have that view."[1] Where police officers trespass in order to secure the view, the courts have not hesitated to find unwarranted intrusion.

■ A careful analysis of the events subsequent to Nordskog's arrest convinces us that the district court was correct in concluding that the activities of the officers were conducted pursuant to reasonable police procedures in response to the "fresh footprints." The entry onto the property where appellant was residing and the discovery of the incriminating physical evidence (clothing and shoes) was based upon legitimate and appropriate action of the police officers, coupled with a plain view observation precipitated by an entry consented to by appellant.

■ As a fall back position, appellant argues that the items (shirt and shoes) which were seized by the officers should have been suppressed as a product of an illegal search and seizure. A motion to suppress was filed. Upon a solid evidentiary record, the state trial judge denied the motion. The officers were invited into the residence. The shoes and clothing were in plain view. Nordskog received a full and fair hearing in state court on his claim that he had been subjected to unlawful search and seizure. Federal habeas corpus relief is unavailable on that claim. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d

1067 (1976); *George v. Blackwell*, 537 F.2d 833 (5th Cir. 1976).

■ Appellant's final alleged constitutional deprivation involves a previously committed rape. Under Florida law, evidence of the commission of "collateral crimes" is admissible if relevant to an issue being litigated. Identity is recognized as a legitimate relevant issue. *Williams v. State*, 110 So.2d 654 (Fla.1959); *Marion v. State*, 283 So.2d 53 (Fla.App.1973). The "identity" exception has a much more limited scope in federal trials, but a prior crime may be used to establish the identity of a defendant. *United States v. Goodwin*, 492 F.2d 1141 (5th Cir. 1974).

The prosecutrix was unable to identify appellant because his face was always covered. The prosecution endeavored to establish appellant's identity by having his clothes identified as those worn by the rapist, having the imprint from his shoes identified as that producing the trail between the prosecutrix's home and where appellant was found, and having evidence presented establishing that appellant had committed a similar rape in the past. The issue of identity was clearly present; in fact, it was the only issue. The previously committed rape did bear a high degree of similarity to that for which Nordskog was being tried.

It is fundamental that federal courts possess only limited authority to consider state evidentiary rulings in a habeas proceeding by a state prisoner. *Burgett v. Texas*, 389 U.S. 109, 113–114, 88 S.Ct. 258, 261, 19 L.Ed.2d 319 (1967); *United States ex rel. Harris v. Illinois*, 457 F.2d 191, 198 (7th Cir. 1972); *Williams v. Wainwright*, 427 F.2d 921 (5th Cir. 1970); *Nees v. Culbertson*, 406 F.2d 621 (5th Cir. 1969). We must limit our inquiry to an examination of whether federally guaranteed rights have been violated. Only where admission is so prejudicial as to constitute a denial of due process will federal courts intervene.

---

1. *See Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (officers were lawfully in Ker's home to make an arrest based on probable cause); *Shorey v. Warden*, 401 F.2d 474 (4th

Cir. 1968) (Shorey's sister, an occupant of his home, consented to the entry of police); *United States v. Barone*, 330 F.2d 543 (2d Cir. 1964) (where police officers lawfully entered the premises to investigate screams).

In the context of the entire trial, we cannot say that the trial judge abused his discretion in allowing evidence of the previous rape, and we certainly cannot say that his decision was such a grievous error as to deny Nordskog of his constitutional right to a fair trial.

We are of the firm view that this record does not present an appropriate case for habeas relief and that the district court's judgment dismissing the petition was correct.

AFFIRMED.