Danny L. SALLIE, Appellant,

v.

STATE OF NORTH CAROLINA, C. T. Caudill, Odom Prison, Jackson, North Carolina, Appellee.

No. 75-2042.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1978.

Decided Nov. 28, 1978.

Michael S. Shelton, Richmond, Va. (Cohen, Abeloff & Staples, Richmond, Va., on brief), for appellant.

Joan H. Byers, Associate Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., Raleigh, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and CHAPMAN,* District Judge.

* Robert F. Chapman, United States District Judge for the District of South Carolina, sitting by designation.

WINTER, Circuit Judge:

Danny L. Sallie, convicted of second degree murder, attacks the validity of his state conviction on fourth, fifth and sixth amendment grounds. He urges that the warrantless search of his mobile home was unreasonable and that the resultant photographic and testimonial evidence gathered and later introduced at trial should have been excluded. He also contends that the instructions to the jury were improper under *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Finally, he urges that he was denied effective assistance of counsel by the oversights of his appointed attorney. The district court denied Sallie's petition for habeas corpus. We affirm.

I.

On July 17, 1970, three-year-old Pamela LeGros died from the simultaneous rupture of her heart and liver. The pathologist who performed the autopsy indicated these ruptures were produced by a forceful blow to the abdomen. His examination revealed a semicircular bruise on the child's abdomen and, in addition, three lacerations on the head, three huge bitemarks and eighty-five to one hundred bruises and scars on the child's body.

Pamela lived with her mother, Dorothy LeGros, and her eleven-year-old sister, Lynda, at a trailer park in Fayetteville, North Carolina. The park manager rented lot 117 to Danny Sallie and Dorothy LeGros, who represented themselves as Mr. and Mrs. Danny LeGros. Sallie lived much of the time at the trailer, kept personal belongings there and contributed to the support of the family. He also maintained quarters at Fort Bragg, where he was stationed.

On July 17, 1970, Sallie left the mobile home around 8:00 a. m. accompanied by Mrs. LeGros. Around 11:00 a. m., he returned alone. Shortly thereafter, he sent Lynda to a store across from the trailer park for sandwich meat. This left Sallie and Pamela in the mobile home.

The next time anyone saw either Pamela or Sallie was when Sallie drove up to a gas station seeking medical assistance for Pamela. Lynda, who was apparently returning from the store, joined him there and got into the car. Sallie received no aid at the gas station or at another station, where he also stopped. Finally, he took Pamela to a hospital, but by this time she was lifeless.

Sometime between noon and 1:00 p. m., the park manager received a telephone call concerning the LeGros trailer. She walked over and found the door standing open, water running and overflowing the tub, and the television blaring. She turned off the spigot and unsuccessfully attempted to turn off the television, before closing the door and departing.

Subsequently, a policeman arrived at the trailer park after receiving information on his radio about the arrival of a dead child at the hospital. From speaking with the manager, he learned that the dead girl had a sister but that no one knew where she was. Concerned about the sister's safety, the officer insisted on inspecting the trailer, although, according to her testimony (but denied by the officer), the manager told him she had just been inside the trailer and had seen no sign of the sister. After a fruitless search, he called a photographer to take pictures of the interior of the trailer because, as he later explained, he thought photographs might be useful to the Department of Social Services.

The photographs taken that day were admitted at Sallie's trial to corroborate the policeman's testimony. They disclosed the disarray and clutter of the trailer's interior, and, more specifically, the presence of an iron standing on the ironing board. This last detail was especially significant because it flatly contradicted a key element of Sallie's own testimony; his testimony suggested that Pamela had been killed by the fall of an iron from the ironing board and indicated that he had rushed Pamela to the hospital without replacing the iron on the board. By showing the iron sitting neatly on the top of the board, the photographs conclusively impeached evidence crucial to

the defense theory of Pamela's death. Defense counsel raised no objection to either the policeman's testimony or the introduction of the photographs. Sallie was convicted of second-degree murder.

## II.

In appeals before the state courts, Sallie contended that the inspection of the trailer, and the photographs taken thereafter, had violated the fourth amendment. He also argued that he had been denied effective assistance of counsel by his attorney's failure to raise these fourth amendment objections. After the state courts refused relief, he petitioned for federal habeas corpus relief. The district court denied relief on the grounds that the photographs and testimony were not prejudicial and, alternatively, that Sallie lacked standing to object to the search because he had no possessory or proprietary interest in the trailer. As for the complaint that his counsel had been ineffective, the district court simply noted that the state court record demonstrated, on its face, that defense counsel had been effective and able. Sallie appealed these determinations and also contended, for the first time, that the trial court's instructions improperly allocated the burdens of proof and persuasion.

After the first panel heard argument in this case, we were greatly concerned about the merits of Sallie's claim of an unreasonable search of his mobile home. We therefore remanded the case to the district court for an evidentiary hearing in order to develop the extent of knowledge of the officer, who made the search and arranged for the taking of the photographs, prior to his entry into the trailer. The district court conducted these proceedings and certified its findings; but, in the meantime, it became necessary to reconstitute the panel because of the death of one of its original members. Before the case was reheard, the Supreme Court of the United States and we decided other cases having a significant effect on the case at bar. After requiring supplemental briefing, we heard reargument before the reconstituted panel.

## III.

We speak first to Sallie's fourth amendment claim. At the outset, we note that neither of the grounds advanced by the district court to deny relief is persuasive. The assertion that the photographs and testimony were not prejudicial is belied by their impeachment value. And Sallie's standing to contest the search is established by his contributions to the rent, his regular occupation of the trailer, and his storing personal possessions there. *See Creasy v. Leake*, 422 F.2d 69, 70 (4 Cir. 1970); *Walker v. Peppersack*, 316 F.2d 119, 121 (4 Cir. 1963).

Nevertheless, we do not reach the merits of Sallie's fourth amendment claim because we think the Supreme Court's intervening decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), precludes habeas relief in this case. As we recently observed in *Doleman v. Muncy*, 579 F.2d 1258 (4 Cir. 1978), *Stone* holds that a state prisoner may not obtain federal habeas relief on fourth amendment grounds if the State has provided him an opportunity for the full and fair litigation of the fourth amendment claims. Sallie had an opportunity for the full and fair litigation of his fourth amendment claim. North Carolina has established a procedure for the suppression of unconstitutionally obtained evidence, N.C.Gen.Stat. §§ 15A–971 to 15A–979. In oral argument, Sallie does not assert either that he lacked this opportunity or that, if he had availed himself of it, he would not have been afforded a full and fair opportunity for litigating his fourth amendment claim. The fact of the matter is that Sallie's counsel failed to make any objection, fourth amendment or otherwise, to the introduction of the photographs or to the policeman's testimony. Having failed to use the opportunity to litigate his fourth amendment claim in state court, Sallie is foreclosed by *Stone* from pursuing it on federal habeas corpus.

## IV.

Sallie's fifth amendment claim is raised for the first time in this appeal. Ordinarily

we would decline to consider it, both because it was not raised in the district court, and, more importantly, because there had not been exhaustion of state remedies. The claim is so patently devoid of merit, however, that we think that we are justified in simplifying further proceedings by rejecting it now.

The claim arises from the trial court's charge to the jury that the element of malice necessary to a finding of second degree murder could be inferred from an act of intentional killing, unless the defendant proved that he had acted in the heat of sudden passion, in which case a verdict of manslaughter would be proper. Sallie argues that this instruction transgressed the principles of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 188, 44 L.Ed.2d 508 (1975), which held that the State must prove beyond a reasonable doubt all elements included within the definition of the crime with which the defendant is charged. The instruction was flawed, according to Sallie, because it placed on him the burden of disproving the existence of malice.

■ We do not think that *Mullaney*'s teachings concerning the allocation of proof apply to the circumstances of this case. The homicide victim here was a three-year-old child. The testimony presented at trial offered no positive basis for a finding that the defendant acted out of provocation or in the sudden heat of passion, and we think that the victim's tender age conclusively negated the possibility of such a finding. Sallie therefore was not entitled to an instruction on the issue of manslaughter. Accordingly, he could suffer no prejudice from an even erroneous instruction on mitigating circumstances, for it gave him more than he was entitled to receive.

## V.

In support of his contention that he had been denied effective assistance of counsel, Sallie noted that defense counsel had failed to object to leading questions asked the victim's sister, had failed to cross-examine a witness, and had failed to object to the introduction of evidence obtained by the search of the trailer. The district court rejected this claim without conducting an evidentiary hearing. Perceiving the standard to be whether the representation was so inadequate as to make a farce of the trial (*citing Root v. Cunningham*, 344 F.2d 1, 3 (4 Cir. 1965)), the court had no difficulty, on reviewing the record, in finding the representation to have been satisfactory.

■ Since the district court's decision, we have reconsidered the standard for evaluating the adequacy of representation by defense counsel. In *Marzullo v. Maryland*, 561 F.2d 540 (4 Cir. 1977), we discarded the farce and mockery standard and declared the standard to be whether defense counsel's representation was within the range of competence demanded of attorneys in criminal cases. This standard does not require that representation be flawless, only that all decisions materially affecting defendant's representation be the product of informed judgment, not neglect or ignorance.

■■ Applying the *Marzullo* standard to this case, we have no difficulty in rejecting Sallie's allegations concerning the examination of witnesses; *Marzullo* was not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness. The failure of defense counsel to raise any objection to the use of evidence obtained from the search of the trailer raises a more serious problem. We would think it standard practice that defense counsel investigate the circumstances of any search and raise all possible objections, short of those which are frivolous, to the admission of evidence obtained from it.

■ As we have said, *Stone v. Powell* precludes further fourth amendment collateral attacks. But we do not read it to say that issuance of a writ of habeas corpus on sixth amendment grounds is barred if a defense attorney fails to object to the admission of evidence obtained in clear violation of the fourth amendment. Certainly it does not say that an evidentiary record on collateral attack, made before *Stone v. Powell* was decided, could not be considered by a court in determining the reasonable-

ness of a search in order to assess the competence of counsel in failing to contest the validity of the search. We therefore turn to that record and decide the sixth amendment claim. Since we conclude that that record shows that the search was not unreasonable, we reject the claim that Sallie's conviction should be upset for violation of his sixth amendment right, and we see no necessity for a further evidentiary hearing.

■ The officer who made the search was specific that he did so because he had been advised that a capital felony had been committed in the trailer and he wanted "to check and see if any other children were left in the trailer alone by themselves." As a result of the "disarrangement and the deplorable conditions of the [trailer] . . [he] had pictures taken with the intention of turning them over to the Department of Social Services in case there were other children involved." The manager, Mrs. Eckhart, testified that she told him that she had already entered the trailer and found no one else present, but the officer testified that he had no such conversation with her.

■ In effecting entry, the officer was responding to an emergency situation. As recently said in *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290 (1978):

> [T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid . . . when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. . . . And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.

Thus, we think that the officer's concern for "other children" in the light of the reported homicide provided a proper basis for him to enter the trailer and to conduct the search. The plain view doctrine justified his arranging for photographs to preserve the appearance of the interior.

It is true that the manager testified that she had told the officer of her entry and the fact that she found no one within. The officer denied being told, but even if he were told, we still think that the search was reasonable. The officer did not know the manager and he did not know her reliability. He would not be required to rely on the thoroughness of her search or the accuracy of her report.

■ Since the search was reasonable, counsel was not ineffective in the constitutional sense in failing to contest its validity. Counsel did not testify in the post-conviction hearing and so we do not know what he may have done to investigate the validity of the search and why he raised no formal objection to it and admission into evidence of its fruits. But even if counsel did nothing, we are constrained to conclude that Sallie suffered no prejudice thereby.

AFFIRMED.

CHAPMAN, District Judge, concurring:

I concur wholeheartedly in Parts I, II, III and IV, and I concur in the result reached in Part V. However, I am disturbed by the discussion and decision of an unnecessary Sixth Amendment question, that creates such a large exception to *Stone v. Powell* as to endanger its future application in habeas corpus cases.

As the opinion so well observes, we have a complete evidentiary record in this matter, including testimony taken upon a prior remand by this court. All of this was done before *Stone v. Powell*. Under these circumstances I would prefer a decision which holds that since the record is available and the search so obviously reasonable, there is no need to discuss or decide the Sixth Amendment question.

For the past decade Federal Courts have been inundated by an ever increasing stream of habeas corpus petitions from state prisoners. This flood of petitions, the vast majority of which are frivolous, has overwhelmed the federal judiciary and delayed the work of the courts at a cost of

billions of dollars in fees, cost and court time. In 1976 the Supreme Court in *Stone v. Powell* offered some relief by precluding Fourth Amendment collateral attacks where the state prisoner had the opportunity for full and fair litigation of this right in his state trial. The present opinion has the effect of sweeping aside *Stone*, since petitioners may now simply allege that counsel was incompetent in not raising the search and seizure issue at the state trial.

When the present decision is read with the retroactive application of *Marzullo*, a new and even greater flood of state prisoner petitions will be forthcoming. Every unhappy prisoner now has a new ground to attack his conviction. Every writ writer in the five states comprising the Fourth Circuit will be ordering paper to begin this assault.

All of this is unnecessary, since the Sixth Amendment issue need not be decided or even discussed to arrive at the proper result in the present case. I suggest that we follow three of the cardinal rules of appellate review as set forth in *Ashwander v. TVA*, 297 U.S. 288, 346, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936):

"2. The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it'. (citations omitted). It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case (citations omitted).

"3. The Court will not 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied'. (citations omitted).

"4. The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."

Let us leave the Sixth Amendment issue for another time and for a case that requires the constitutional question to be faced and decided.