Leroy SATCHELL, Petitioner,

v.

Harold J. CARDWELL, Former Warden, Arizona State Prison, Respondent.

No. 79–2622.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1980.

Decided Aug. 10, 1981.

Rehearing Denied Sept. 30, 1981.

Kennedy, Circuit Judge, filed concurring opinion.

S. Jeffrey Minker, Tucson, Ariz., for petitioner.

Jessica Gifford, Asst. Atty. Gen., Phoenix, Ariz., for respondent.

Before BROWNING, Chief Judge, KENNEDY, Circuit Judge, and HOFFMAN *, Senior District Judge.

WALTER E. HOFFMAN, District Judge:

Petitioner appeals the denial of his habeas corpus petition by the United States District Court for the District of Arizona. He contends that his trial attorney's failure to make a motion to suppress certain evidence, allegedly obtained in violation of his Fourth Amendment rights, abrogated his Sixth Amendment right to effective assistance of counsel.[1] Without deciding but assuming, *arguendo*, that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), does not preclude review of an ineffective counsel claim grounded in failure to make a possible Fourth Amendment argument, we find that Satchell's Sixth Amendment rights were not violated and thus uphold the lower court's denial of his petition.

Satchell was convicted in an Arizona state court, after trial to a jury, of kidnapping, rape, aggravated assault, and assault with a deadly weapon, to-wit, a knife. The victim, a fifty-year-old Indian woman, testified that Satchell forced her into his pickup truck as she left a Phoenix bar in a drunken state and drove her to his trailer, where he repeatedly raped, stabbed, and beat her between May 2 and 5, 1972. *RT* at 171–216. When a neighbor of Satchell's stopped by, she said, she signalled him to call the au-

---

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. Of the three grounds raised on appeal, two were stricken for failure to raise them below.

thorities by silently mouthing the word "police." *RT* at 207–10. On May 5, the police received a tip that two Indian women were being held hostage at a specified address.[2] Officer Ely of the Phoenix City Police testified that he and his partner went to the locale in response to a radio dispatch at 2:42 P.M., where they found three dwellings: a house where no one was at home, an abandoned house, and a trailer in the rear.[3] Both briefs spoke of a dispatch to the locale or address, but Ely's testimony was that he was specifically told to go to the rear of the trailer. *RT* at 308. After checking the empty house first, he proceeded to the trailer and, upon hearing voices inside, knocked at the trailer door. A man opened the door a matter of inches and asked who was knocking. Despite the fact that it was mid-afternoon and Ely was probably in uniform,[4] Satchell did not open the door further than 3 or 4 inches. The officer then pulled the door the rest of the way open and saw the victim, who pointed from her battered face to Satchell. *RT* at 311. Ely testified that she had clear chain-link im-

prints on her ankles and cuts all over her body, and was bleeding from some of the cuts. *RT* at 318–19. Ely asked Satchell to step outside, entered the trailer, and questioned the victim before making a further search or an arrest. *RT* at 312. Other evidence at trial, in addition to testimony by the officers, the victim, and Satchell, included the testimony of the physician who treated her as to the extensiveness of her injuries,[5] photographs of the interior of the trailer, and chains and a board used to tie the victim while she was being raped. The chains were seized from inside the trailer, but the board was in plain view outside. *RT* at 368–70.

The test for judging petitioner's Sixth Amendment claim[6] is two-fold: did counsel act in a reasonably competent and effective manner and, if not, was his incompetence prejudicial to the defense? *Cooper v. Fitzharris*, 586 F.2d 1325, 1327 (9th Cir. 1978) (en banc). *See also, Ewing v. Williams*, 596 F.2d 391, 394 (9th Cir. 1979). Satchell failed the first part of the test,[7] to

2. Although nothing in the record indicates who gave the tip to the police, because Officer Ely's testimony on this point was excluded as hearsay, *RT* at 306, it seems probable that the telephone tip was from the visiting neighbor.

3. Satchell's aunt testified that Satchell owned a trailer and two shacks on her property. *RT* at 400. One of the detectives described the grounds as filled with piles of trash and scrap metal. *RT* at 380. A red pickup and a disabled car were parked outside the trailer.

4. Ely, who had been on the force three and a half years, was the patrolman making the initial response to a radio dispatch. He then called Detective Charles Adams to make the investigation. *RT* at 366–68, 371. The victim testified she felt relief when she saw the officers out of the trailer window and watched them approach the door. *RT* at 216.

5. The victim testified that she spent a week and a half in the hospital. *RT* at 220.

6. We decline to decide whether *Stone v. Powell, supra,* bars examination of such a claim when grounded on a Fourth Amendment violation because such a holding is unnecessary to the result here. The Fourth Circuit's holding that such claims are not barred by *Stone v. Powell* was criticized vigorously by Judge Chapman in his concurrence for just such pre-

maturity and lack of necessity. *Sallie v. North Carolina*, 587 F.2d 636, 641–42 (4th Cir. 1978), *cert. denied*, 441 U.S. 911, 99 S.Ct. 2009, 60 L.Ed.2d 383 (1979). Certiorari was denied in *Sallie*, as it was earlier to the Second Circuit's contrary holding in *LiPuma v. Corrections Commissioner*, 560 F.2d 84, 93 & n.6 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977). A District Court in this circuit has recently followed the Fourth Circuit's view, but a decision on the appeal, heard late last year, is still pending. *Moran v. Morris*, 478 F.Supp. 145, 150–152 (C.D.Cal.1979), *appeal heard* No. 79–2655 (9th Cir. Nov. 7, 1980).

7. If Satchell had shown counsel did not act in a reasonably competent manner, the burden would have been on him to show prejudice from his attorney's failure to move to suppress, which his appellate counsel admitted at oral argument was the only point of incompetence against Satchell's trial attorney. "When the claim of ineffective assistance of counsel rests upon specific acts or omissions of counsel at trial, . . . relief will be granted only if it appears that the defendant was prejudiced by counsel's conduct." *Cooper, supra,* at 1331. The lower court must make a specific finding of prejudice in the record. *Ewing, supra,* 596 F.2d at 396. What the burden is, however, has not been defined by this circuit and was left open by the Supreme Court in *Wainwright v. Sykes*, 433

show that his "[d]efense counsel's errors or omissions . . . reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent criminal defense attorney— they must be errors a reasonably competent attorney acting as a diligent conscientious advocate would not have made, for that is the constitutional standard." *Cooper, supra,* at 1330. Although a suppression motion might have been successful, the issue was so close that it cannot be said that a reasonably competent attorney could not have failed to make such a motion. That failure, in the context of his attorney's other aggressive actions on Satchell's behalf, did not deprive Satchell of competent representation of counsel.[8] He was not entitled to an attorney who made no mistakes. *Id.*

Satchell's attorney testified at the post-conviction hearing that his research led him to believe that a motion to suppress would not be successful because he discovered an Arizona case that "was almost directly on point." *RT* (Hearing June 22, 1976) 30; *see also id.* at 22–24, 30–31. In *State v. Pine,* 8 Ariz.App. 430, 446 P.2d 940 (1968), however, the main door was already open when the police arrived and the outer screen door was opened, either by the occupant or by the police with her consent, so that police identification could be shown. Once lawfully in the doorway, the officers could use their sighting of contraband under the "plain view" doctrine to establish probable cause to enter. *Id.* 446 P.2d at 943–44. The door to Satchell's trailer, in contrast, was not opened wide enough by consent for Officer Ely to see the victim until he pulled it further open.

Respondent argues, however, that even if *Pine* does not save the entry, the exigent circumstances here plus the facts known to

---

U.S. 72, 87, 91, 97 S.Ct. 2497, 2506, 2508, 53 L.Ed.2d 594 (1977); *id.* at 97–98, 97 S.Ct. at 2511–2512 (White, J., concurring), 117 (Brennan, J., dissenting). *See also, Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Sufficient evidence was presented to uphold Satchell's conviction, even if the chains and photographs had been barred as the direct result, and thus "fruit of the poisonous tree," of an illegal entry. There was sufficient attenuation between the officer's act and the doctor's testimony to dissipate any taint, and the same was probably true of the testimony of the victim. The exclusionary rule is invoked much less frequently to suppress testimonial evidence than to bar nontestimonial evidence. *See United States v. Ceccolini,* 435 U.S. 268, 275–80, 98 S.Ct. 1054, 1059–62, 55 L.Ed.2d 268 (1978); *see also, United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). The Supreme Court, loathe to "perpetually disable a witness from testifying about relevant and material facts," has differentiated between nontestimonial evidence and that of "live witnesses—even putative defendants." *Ceccolini, supra,* 435 U.S. at 277, 98 S.Ct. at 1060. Where this court has suppressed such evidence, the testimony was that of persons implicated in the criminal activity revealed by the illegal search; the court stressed that there was no indication that they would have come forward of their own volition or been discovered through another source. *United States v. Rubalcava-Montoya,* 597 F.2d 140, 143–44 (9th Cir. 1978). The situation is different where the witness was a brutally beaten multiple-rape victim who, even had she not gone to the police, would have probably been discovered when her name was turned over to the authorities by the physician who treated her. Although a bench warrant was issued and she was jailed to ensure her appearance, these actions apparently were necessitated by her drunken state, not any reluctance to testify against Satchell. Under either the attenuation theory or the inevitable discovery exception, *Crews, supra,* 445 U.S. at 470, 100 S.Ct. at 1249, her testimony would have been permitted. The board, which was in plain view outside the trailer when seized, would not have been suppressed. Although only the chains and photographs would have been suppressed, and they were unnecessary to conviction, it is impossible to say that their introduction, if erroneous, was harmless, given their inflammatory nature.

8. Satchell's attorney, an assistant public defender, testified at the state post-conviction hearing that he had an investigator interview Satchell and he himself talked to him some 10 to 12 hours before trial. He sent investigators out to investigate at least 6 factual points and to locate and interview potential witnesses. He read all the police reports provided him and did legal research on the possibilities of a motion to suppress. He twice successfully moved to have Satchell examined for competency to stand trial, once before and once during trial, as well as making several other motions. *RT* (Hearing June 22, 1976) at 28–35. Satchell's decision to take the stand at trial was made against his advice. *Id.* at 36.

the police justify the action taken. The entry may be permissible under one of two theories. Either the anonymous tip, its confirmation by finding the trailer and hearing the voices, and Satchell's reluctance to open the door amounted to probable cause under exigent circumstances or, alternatively, a police officer investigating a report of women held as hostages is justified, on less than probable cause, in taking some action such as pulling further a partially open door that falls short of a full-blown entry and thus does not invoke the full protection of the Fourth Amendment.

█ The argument that these facts amounted to probable cause is probably the more tenuous of the two. Nothing in the record specifies that the party providing the tip, probably the visiting neighbor, made an anonymous call. Even if the caller was anonymous, when the facts that person related—the address, the trailer, and a woman held hostage inside—were at least partially confirmed by Ely on his arrival, that confirmation gave greater reliability to the tip. A tip must contain sufficient information to permit an independent determination that the informant is reliable and his information was based on more than casual rumor. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Although the tip here, if anonymous and uncorroborated, would fail that test, the confirmation of the correctness of information in such a tip may, of itself, prove the reliability of both the informant and his information. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329,

3 L.Ed.2d 327 (1959). *See also, United States v. Branch*, 565 F.2d 274 (4th Cir. 1977). On arrival Ely confirmed that there was indeed a trailer in the rear at that address and then heard voices from inside the trailer, although no one was in the other dwellings. The fact that the man answering his knock only opened the door a crack in mid-afternoon, even on seeing a uniformed policeman,[9] may have added up to probable cause, given the exigent circumstances of a woman reportedly held hostage.

Even if the facts as Ely knew them at the time did not amount to probable cause, they certainly gave rise to a reasonable belief or articulable suspicion, in light of his three and a half years experience, which may be enough in such an exigency to justify some investigatory action, short of a complete search involving the full panoply of Fourth Amendment protections. Just as the facts in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), did not reach the level of probable cause but were enough under exigent conditions to permit a stop and frisk falling short of a full-fledged search, so the officer's investigatory action here, based on reasonable belief in light of his experience and the existing exigency, of pulling the door open a couple of feet further, stopped short of a complete entry and search.[10] Supreme Court cases disallowing warrantless searches have involved less urgent circumstances than here. In *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), a confidential informant's tip, plus the smell of opium in the hallway and scuffling noises heard in re-

---

9. *See* note 4 *supra*.

10. The Court recently upheld the detention of a suspect encountered leaving the premises the police had a warrant to search until the search uncovered enough evidence to arrest him on probable cause. *Michigan v. Summers*, —— U.S. ——, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). The detention was constitutional even though it "constituted a seizure within the meaning of the Fourth Amendment" that was "unsupported by probable cause." *Id.* at ——, 101 S.Ct. at 2590. The Court pointed out that "some seizures admittedly covered by the Fourth Amendment constitute such limited in-

trusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity." *Id.* at ——, 101 S.Ct. at 2592. That exception "is not confined to the momentary, on-the-street detention accompanied by a frisk for weapons." *Id.* Although a warrant was present in *Summers*, the Court did not rule out allowing comparable seizures where justified by exigent circumstances in the absence of a warrant. *Id.* at —— n.17, 101 S.Ct. 2594 n.17.

sponse to knocking by the police, did not justify a warrantless arrest, but no one's life was possibly in danger. Although municipal officials could enter a burning building to put out the fire in *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), no full-fledged warrantless search for arson clues could be carried out as the danger had then passed.

The Court in *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), would not condone a full investigatory search by homicide detectives without a warrant because no emergency threatened life once all persons in the apartment had been located and secured. Nevertheless, the Court in *Mincey* took pains to assure lower courts that the decision would have been different had a truly exigent situation existed:

> We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person a within is in need of immediate aid.... 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' ... And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities....
>
> But a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation,' ....

*Id.* at 392–93, 98 S.Ct. at 2413 (citations and footnotes omitted).

Several points made in *Mincey* are relevant here: First, the need to investigate an emergency, such as here, gives rise to a right to enter and search without a warrant. Second, that right probably exists on less than probable cause; the Court's words are "reasonably believes," a term it has not used as synonymous with probable cause in the past. Third, there was a need here "to protect or preserve life or avoid serious injury" where Ely reasonably believed a woman was held hostage. Fourth, situations of the type encountered by Officer Ely justify what would *otherwise be an illegal entry* without an exigency or emergency. Fifth, when such an exigency is used as a reason for operating in an otherwise illegal way, the search must be limited to the parameters of the exigency itself, as was the officer's limited action of pulling the door wider here.

It is interesting that the Court in *Mincey* cited as authority for this last proposition its earlier opinion in *Terry*, which clearly allowed a limited search in an exigency on *less than probable cause*. Once that limited action of pulling the door was taken and the victim seen pointing to her battered face and then to Satchell, probable cause clearly existed. Even at this point, Ely's actions were "strictly circumscribed": he merely asked Satchell to step outside, entered, and questioned the victim. A full search and arrest were not made until she told the police her story. The chains the police seized were in "plain view" during legitimate emergency activities. *Mincey, supra*, at 393, 98 S.Ct. at 2413.

In *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the facts more clearly added up to probable cause than here, but the emergency was less: two taxi drivers followed an armed robbery suspect and saw him enter a house five minutes before, but no one else had been reported within whose safety would have been in jeopardy as here. The entry in *Hayden* was permissible[11] because "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would endanger their lives or the lives of others. Speed here was essential...." *Id.* at 298–99, 87 S.Ct. at 1645–46. In *Hayden*, an armed robber was thought to be alone in a house surrounded by police; further delay would be less likely

---

11. The lower Court in *Hayden* found it unnecessary to decide whether the woman who answered the door had consented to the police entry as exigent circumstances justified the entry. *Id.* at 297–98 n. 4, 87 S.Ct. at 1645–46 n. 4.

to endanger lives under those conditions than here, where women were reportedly held hostage inside.

*Hayden* and *Mincey* dealt with the right to make a full search due to exigent circumstances; other cases have allowed minimal intrusions amounting to less than a full search on less than probable cause because of the duty of the police to investigate tips. For example, in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), based on *Terry*, an informant's mere tip that a person in a car was carrying a concealed weapon was justification for the officer to reach through the partly open window and remove the concealed gun from defendant's belt. In addition, the fact that defendant only rolled the window part way down for a police officer, itself justified further suspicion, just as did Satchell's mere cracking of the door to Officer Ely. The Fifth Circuit in *Nordskog v. Wainwright*, 546 F.2d 69 (5th Cir. 1977), upheld the police peeking in a window, even though their suspicion was based solely on footprints from the victim's house to that of the suspect. Similarly, the Seventh Circuit upheld a trespass on defendant's property to verify a tip that stolen autos were being dismantled at a specific locale. *United States v. Conner*, 478 F.2d 1320 (7th Cir. 1973). "[A] mere 'technical trespass' did not transform an otherwise reasonable investigation into a unreasonable search." *Id.* at 1323.

In *Wayne v. United States*, 318 F.2d 205 (D.C.Cir.1963), a decision later cited with approval by the Supreme Court in *Mincey, supra*, 437 U.S. at 393, 98 S.Ct. at 2413, then Circuit Judge Burger wrote eloquently of the dangers of second-guessing emergency police decisions:

The appraisal of exigent circumstances surrounding execution of search warrants or forcible entries without a search warrant presents difficult and delicate problems. These cases do not arise in the calm which pervades a courtroom or library.... The events are likely to be emotion-charged, filled with tension, and frequently attended by grave risks. Neither the Constitution, statutes or judicial decisions have made the home inviolable in an absolute sense. Collectively they have surrounded the home with great protection but protection which is qualified by the needs of ordered liberty in a civilized society.

Breaking into a home by force is not illegal if it is reasonable in the circumstances .... The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.[12]

*Id.* at 211–12. We believe the exigency here justified the limited entry.

In light of the above, we do not find the state court's findings as to Satchell's attorney's competence were clearly erroneous. Under 28 U.S.C § 2254(d), we are obligated to give deference to state court findings of competence after a full and fair hearing on the merits, unless those findings are unsupported by the record or other circumstances exist, just as we are duty bound under F.R.Civ.P. 52(a) not to overturn the District Court's similar findings of adequate representation unless clearly erroneous.

Our reading of the transcripts of both the trial and the post-conviction hearing supports those findings by the state and federal habeas courts. The same state judge who conducted Satchell's trial presided at the post-conviction hearing, at which he heard testimony from both Satchell and his former trial attorney. Judge Coulter, who was a model of patience and concern for Satchell's rights throughout both the trial and post-conviction hearing, specifically inquired into the circumstances of the entry

---

**12.** Reports made of deaths or kidnappings or fires may turn out to be false, "[b]ut the business of policemen and firemen is *to act*, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process." *Id.* at

212. Given the judicial precedents for upholding limited entries in exigent circumstances, it cannot be said that a reasonably competent attorney would not have determined that a motion to suppress this entry would have been unsuccessful.

and the attorney's failure to make a motion to suppress. In his order of June 24, 1976, he found:

   1. That the legal representation of the defendant was not only adequate but commendable under the circumstances.

   . . . .

   3. That the allegations contained in the Petition regarding the failure and/or refusal of defendant's trial counsel to prepare and file a Motion to Suppress are wholly without merit.

*CT* at Exhibit F. The Arizona Supreme Court denied review of that order on November 30, 1976. *CT* at Exhibit H. The District Court properly gave those findings, made after a full and fair hearing, a presumption of correctness. We agree with that court that the state judge's conclusions were fully supported by the transcripts of the trial and the post-conviction hearing. *Satchell v. Cardwell*, No.Civ. 78–386 (D.Ariz. Dec. 29, 1978). As the Supreme Court has recently admonished us to remember, § 2254(d) demands deference for state court findings of fact unless not supported by the record. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Since determinations of the competence of counsel are findings of fact, *Ewing, supra*, 596 F.2d at 393, we uphold the findings of the state and federal courts that Satchell was adequately represented by counsel and his Sixth Amendment rights were not abridged by his attorney's failure to file a motion to suppress the evidence.

   AFFIRMED.

KENNEDY, Circuit Judge, concurring:

This circuit has not yet ruled whether *Stone v. Powell* bars our consideration of fourth amendment claims when cast as an argument respecting competency of counsel. Even if we are permitted to circumvent *Stone v. Powell* in this way, we should be cautious about turning sixth amendment cases into fourth amendment ones unless there is an absolute necessity to do so. Based on the trial court's observation of the trial counsel's skill and the fact that the lawyer studied the fourth amendment point and researched it carefully, I would determine he was competent without further discussion of the fourth amendment issues.

Since the court's opinion treats those issues at some length, it is appropriate to state my full agreement with the apparent holding that the officer's opening of the screen door was reasonable and necessary under the circumstances and that the evidence so disclosed was not barred by the exclusionary rule. If, however, the iron logic of the exclusionary rule were to apply to the good faith and sensible actions the officer took here and thus make the evidence inadmissible, I would be hard pressed to say that its admission was harmless error. With these observations, I concur in the opinion of the court.