Dale James KING, Petitioner,

v.

Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, State of Florida, Respondent.

No. 79–4221–Civ–EPS.

United States District Court,
S. D. Florida,
Miami Division.

March 28, 1980.

Thomas G. Murray, Jr., Miami, Fla., for petitioner.

James H. Greason, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for respondent.

## MEMORANDUM OPINION

SPELLMAN, District Judge.

Dale James King, who is represented by private counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking a conviction for two counts of first degree murder and two counts of attempted murder entered on October 9, 1976, following a jury trial in Case No. 76–4179A in the Circuit Court of the Eleventh Judicial Circuit, at Dade County. King is currently serving sentences of two consecutive terms of life imprisonment and two terms of fifteen years, each to run concurrently with the life sentences.

For its consideration with this petition, the Court has the Petitioner's memorandum, the Respondent's response to an order to show cause, the Petitioner's reply to the response, the briefs filed on direct appeal, and the record on appeal, including a transcript of the jury trial.

King presents the following claims for relief in his petition:

1. Denial of the right to confront and cross-examine witnesses and of the right of due process of law because hearsay testimony of a severed co-defendant was admitted at the trial.

2. Denial of the right to due process and a fair trial because of the following instances of prosecutorial misconduct:

A. Cross-examination of Petitioner regarding pre-trial, in custody, silence.

B. Questioning of prosecution witness regarding plea negotiations.

C. Violation of Florida Rules of Discovery depriving Petitioner of his right to a fair trial and to the effective assistance of counsel.

D. Prejudicial statements made by the prosecutor during jury selection.

E. Trial by "innuendo" elicited by the prosecutor.

Each of these issues was raised on direct appeal, and the conviction was affirmed. *King v. State*, 355 So.2d 831 (Fla. 3d DCA 1978). The Florida Supreme Court denied certiorari. State remedies as to these issues have been exhausted.

King first contends that in allowing the admission of testimony of Jimmy Rodriguez concerning a hearsay statement of a severed co-defendant, Phillip Courtney, which inculpated King, the State Court denied his right to confront and cross-examine a witness against him. He submits that the direct examination by the prosecutor of Jimmy Rodriguez resulted in a denial of his right to a fair trial:

Q. [By Mr. Graves] Now, my question again is, did you say something to Mr. Courtney about what information you had gotten either through the newspaper or otherwise, concerning the shooting?

A. I don't remember exactly what we discussed, but I remember I went there to ask them you know, if it was true that they went out and did what they did.

Q. What did Mr. Courtney say, if anything?

A. He said, "Yes." He said exactly what they went out and did.

Q. What, if anything, did he say to you?

A. I don't recall word for word, but I believe he told me, in front of Butch McGowan and Larry Steven Williams and a couple of other people, that they had went out in a car, loaded up the shotgun and shot the shotgun at a crowd of black people at a party that was going on.

Q. Did he indicate to you at that time or at any time after that who the individuals were that were with him in the car at the time that that shot was fired?

A. Yes. He said he was in the car. Dale King was in the car and Jimmy Jacobs was in the car and no other names, that I can remember.

Q. The only individuals he mentioned, then, were those particular three individuals?

A. Yes. (R/414, 415)

The Petitioner contends that *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), governs this case.

*Bruton* requires exclusion of out of court statements by non-testifying co-defendants when such statements directly inculpate a complaining co-defendant.

The Respondent claims that the testimony is admissible as a declaration against penal interest under both Florida and Federal law. The arguments advanced for that proposition, however, are unpersuasive.

 Nevertheless, the function of this Court in consideration of a petition for habeas corpus is not to determine whether a state evidentiary rule has been violated, but to consider whether the trial court complied with guarantees of the United States Constitution. Therefore, this Court must consider whether the Constitutional guarantee of the right to confront and cross-examine adverse witnesses has been denied.

In *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the Supreme Court determined that *Bruton* violations are subject to the harmless error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court held that "unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." 405 U.S. at 432, 92 S.Ct. at 1060. In *Schneble*, the petitioner had given a detailed confession. Objective evidence supported the details of his confession. The Court concluded that the complained of hearsay statement did little more than corroborate the already strong inculpatory evidence, and found that the statements were harmless beyond a reasonable doubt.

*Schneble* is squarely applicable to this case. This Petitioner also confessed to the crime. Although he challenged his confession as resulting from police coercion, the confession was ruled to be admissible at a suppression hearing, and its validity is not challenged in this habeas corpus petition. The confession was given by King, under oath, to four officers at the Stearns County Jail in St. Cloud, Minnesota, on the morning of April 24, 1976. The confession was read into evidence at King's trial. (T/567–584).

In his confession, King related that late one night about the end of August of 1974, he, James Jacobs, and Phillip Brannon Courtney "shot some niggers," "on about 26th Avenue, between 96th and 98th Streets, somewhere around there." The young men had been drinking and "shooting the shotgun earlier that night," riding in King's automobile, a white two door, 1964 Pontiac LeMans. At about 1:00 A.M., King, Jim Jacobs, and Brannon Courtney were "riding along" and Courtney said "Let's go shoot some niggers." King and Jacobs at first said "No." Courtney, however suggested that the other boys were "scared," and:

> . . . pretty soon he had us talked into it and we were all for it. Each one of us wanted to shoot it and it ended up Brannon drove while I shot it and Jim was in the back seat. (T/580).

King stated that while they were driving along they came upon a "bunch of people" in a front yard, and:

> I just pointed the gun and pulled the trigger. I pointed it into the crowd. (T/581).

In addition to the confession and the Courtney hearsay statement, the Jury heard the testimony of Mildred Davis. Davis testified that on the evening in question she was at a residence at 2491 N.W. 86th Street where a birthday party had been held for her son. This address is across the street from her own home. She saw a white car drive up at high speed, and stop, turn a corner and return. Shots were fired from the automobile, two of the party goers were killed, and two were injured. There was a street light, and Davis positively identified Dale James King as the person she saw sitting on the passenger side of the front seat. Davis was approximately seven feet from the vehicle in which she saw King. Davis stated that the shotgun blast was fired from the rear window on the passenger side. (T/209–230).

Further, the Jury heard the testimony of Jimmy Rodriguez that he personally confronted Dale James King, asking him "how could he do something like this." Rodriguez testified that King replied:

> Jimmy, I don't know how. I just looked at the crowd.
>
> \* \* \* \* \* \*
>
> Just—he just looked at the ground and he said, "I don't know how". (T/416–417).

Finally, defense counsel introduced as a defense exhibit (T/610) the statement of Joseph McGowan, a friend of the Petitioner. McGowan had been with King, Jacobs and Courtney while they were shooting the shotgun earlier on the night of this incident. McGowan's statement related that King had fired the shotgun, as related in King's own statement. (T/622).

King next contends that he was denied his Fifth Amendment privilege against self incrimination by questions of the prosecutor concerning his failure to tell the Court at his Minnesota extradition hearing that his confession had been coerced.

King testified at length at the trial, claiming that his confession was coerced by officials who abused him generally, including threatening him with the electric chair, hitting his head against a desk, and promising him a reduced charge and sentence if he cooperated, all while he asked for a lawyer. (T/714–727).

King complains of the following exchanges during his cross-examination by the prosecution:

Q: *Now, when you got in there before the judge and the judge explained your rights concerning extradition, certainly you told the judge the statement the police had taken from you was taken because they had beaten you and threatened you with the electric chair, didn't you?*

A: No.

 \* \* \* \* \* \*

Q: *Well, did you say anything about the statement?*

A: No, I did not.

Q: *You knew that you had been forced into giving this confession on a first degree murder case for which you could get the electric chair and you*

didn't tell the Judge in Minnesota, "Judge, they are framing me?" You didn't tell him that?

A: No, I did not.

Q: Were your parents with you at the extradition proceedings?

A: No.

Q: Was anybody from your family at the extradition proceedings?

A: No.

Q: *Did anybody go up to the judge and say, "Judge, they are framing my son?" Your parents, did any of them, to your knowledge, do that?*

MR. YELDIN: Objection.

THE COURT: Sustained. He already answered they weren't there.

Q: [By Mr. Graves] *I am asking outside of the hearing, did your parents ever go to the judge either prior to the hearing or after the hearing saying, "They forced my son to make this statement. Please don't let them extradite him"?*

A: Not that I know of.

Q: *Did you or your parents ever call the Governor of the State of Minnesota and say "Governor, the police officers from the State of Florida have forced me," or your parents say, "have forced my son, implicating him in a first degree murder case for which he could get the death penalty"?*

A: No.

Q: Do you know the governor of your state has to approve any extradition of you to the State of Florida?

A: No.

Q: You didn't think the governor would do anything for you either?

A: No.

Q: How about this lawyer that your parents were getting you? Why wasn't he at the extradition hearing?

A: I don't know.

Q: *Did you have your lawyer present a petition to the judge saying, "Your Honor," whatever this judge's name is, "The State of Florida has forced my client to give a statement against his will without an attorney being present and we are going to fight the extradition proceedings"?*

(T/771–773; Emphasis supplied by Petitioner).

Q: During that period of time that you were afraid, were you just afraid of Detective Goedecke or the charge of first degree murder?

A: I don't know, I was afraid. That is all I can tell you.

Q: Just afraid of everything; is that right?

A: I was afraid for my life.

Q: *But you never told that Judge up in Minnesota, did you?*

A: No, I didn't

(T/834–835; Emphasis supplied by Petitioner.)

■ The Respondent contends that the failure of defense counsel to object to this testimony at trial upon the grounds asserted in this petition precludes federal habeas corpus relief under the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The Supreme Court there held that failure to comply with the state contemporaneous objection rule will preclude federal habeas corpus relief in the absence of a showing of cause for the failure to object and actual prejudice. That rule is inapplicable to this case, however, since it is a procedural principle of Florida law which the Florida Courts did not apply in this case. The Florida Third District Court of Appeal treated this issue at length, upon its merits. *King v. State*, 355 So.2d 831 (Fla. 3rd DCA 1978).

King relies upon *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which held that the use for impeachment purposes of a suspect's silence at the time of arrest and after the giving of *Miranda* warnings is a violation of Fourteenth Amendment Due Process.

The Florida Third District Court of Appeal held that the statement was used, not

to indicate King's guilt, which his confession had admitted, but rather to show his state of mind, proving that his confession was voluntary, a point hotly contested at trial. The Court further held that even if the questions were improper, the error was harmless under the facts of this case. *King v. State, supra* at 837–38.

It may be that these questions were proper, since they were not aimed at King's exculpatory story, but rather at his testimony concerning the alleged circumstances surrounding his confession. See *Stone v. Estelle,* 556 F.2d 1242 (5th Cir. 1977).

■ Nevertheless, assuming the complained of questions are in contravention of *Doyle,* it is apparent from this record that the error was harmless. As noted by the Fifth Circuit in *Stone v. Estelle,* supra, the Supreme Court expressly left the door open to a finding of harmlessness in a case such as this. *Doyle v. Ohio, supra,* 426 U.S. at 619–20, 96 S.Ct. at 2245–46.

King next contends that it was error for the Court to permit the introduction of testimony concerning pre-trial plea bargaining. King cites *Fla.R.Crim.P.* 3.171, and *Fed.R.Crim.P.* 11(e)(6), both of which (along with *Fed.R.Ev.* 410) exclude evidence of offers to plead guilty and statements made in connection with such offers.

King complains of the following redirect examination of Officer Goedecke:

Q: Have you ever, or do you have the authority to offer a defendant a plea to second degree murder?

A: No, sir.

Q: Who has that authority?

A: It would be the Court or the State, in negotiation, I assume.

Q: I am just going to correct you on one thing. Not even a Court can offer a defendant a plea to a lesser charge. Now, who were the prosecutors assigned to this case?

A: Yourself.

Q: I wasn't the only one, was I?

A: Well, I can't think of the last name.

MR. YEDLIN: Arthur Alvarez.

THE WITNESS: I am sorry. Arthur Alvarez.

MR. GRAVES: Your Honor, I would appreciate it if I could question my witness. I appreciate Mr. Yedlin helping me, but—

THE COURT: He was trying to help you.

Q: [By Mr. Graves] Now, did Art Alvarez, an Assistant State Attorney, or myself, ever authorize you to offer a plea of second degree murder or any lesser plea to this defendant?

A: No, sir.

Q: All right, and did Arthur Alvarez or Fred Graves, in your presence, ever offer this defendant any plea to second degree murder?

A: No, sir.

Q: Relating to the discussions that you had with Mr. Yedlin after that deposition, was it Mr. Yedlin and Mr. Alvarez that discussed the possibility of a plea at that time?

A: *Was some discussion—*

Q: Can't you just answer my question "yes" or "no"?

A: *There was some discussion, yes.*

Q: Thank you, Officer

Now, during that period of time, did Mr. Alvarez ever offer this defendant a plea to anything less than first degree murder?

A: To my knowledge, no.

Q: You are aware of the two, and only two penalties for first degree murder in the State of Florida?

A: Yes, sir.

Q: What are those?

A: The electric chair or twenty-five years. Life, twenty-five years maximum you have to serve.

Q: Just slow down and go back over that, please. Twenty-five years maximum?

A: Minimum.

Q: Life imprisonment with what?

A: With twenty-five year minimum served, calendar years, or the electric chair.

Q: *Now, in reference to that plea discussion, was there not something else involved or required of this defendant before Mr. Alvarez would even accept that plea?*

MR. YEDLIN: Objection, Your Honor.

THE COURT: Sustained.

(T/647–649; Emphasis supplied by Petitioner.)

It should be pointed out that King has cited no federal Constitutional law in connection with this claim. The rules relied upon are procedural and can form no basis for federal habeas corpus relief. This case does not involve the admission of inculpatory statements made by a defendant during plea bargaining, but rather the simple fact that plea bargaining occurred. There is serious question whether a federal Constitutional issue has been raised or exhausted in state Court upon this claim.

Assuming that it has, and assuming that as a matter of Constitutional law, rather than mere procedure, the fact of plea bargaining is inadmissible as proof of guilt, King is still entitled to no relief upon this ground.

The Respondent relies upon the Florida contemporaneous objection rule to bar federal habeas corpus relief upon this issue, claiming that there has been no showing of a valid cause for failure to object to the questions on this Constitutional ground, and no showing of prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). This may be true.

Assuming again, however, that the claim is properly before this Court, the context of the questions complained of readily explains the action of the Court in permitting them.

On cross-examination of Officer Goedecke, defense counsel sought to demonstrate that King's confession had resulted from threats of electrocution and a promise of a plea to second degree murder if he would confess. Defense counsel elicited the following:

Q: [By Mr. Yedlin] Isn't it true that you offered the defendant, Dale King, a second degree murder if he would make a statement.

A: No, Sir.

* * * * * *

Q: [By Mr. Yedlin] Did you not offer a second degree murder to Dale King?

(T/608–609).

■ Subsequently, on redirect examination of Officer Goedecke, the prosecutor questioned him as quoted previously, regarding whether he had made such a promise to King. This subject was introduced by defense counsel, not the state, and the state could properly question the witness concerning those matters raised by the defense.

King also raises the failure of the prosecution to comply with state discovery provisions. He claims that the failure to disclose prosecution witnesses and evidence to defense counsel prior to trial, as required by *Fla.R.Crim.P.* 3.220, deprived him of a fair trial and the right to effective assistance of counsel. He contends that although his attorney filed a written demand for discovery, pursuant to *Fla.R.Crim.P.* 3.220, the prosecutor failed to disclose the names of two witnesses, Mildred Davis and Jorge Barragan, prior to trial. He further claims that the prosecutor failed to provide him with a photograph of himself, taken while he was in a Minnesota jail on the day of his arrest, and introduced into evidence over defense's objection.

This issue was addressed by the State Appellate Court, which noted that "failure to comply with the rule should not result in the exclusion of relevant evidence from the jury unless no other remedy suffices." *King v. State*, at 834. The District Court of Appeal found that the fact that the trial was interrupted and the defendant's attorney allowed to interview the witnesses was sufficient remedy to prevent prejudice to the defendant. Further, the Court found that the defense knew that Mildred Davis was an eye witness to the crime. The Court also determined that the Trial Court made sufficient inquiry to determine that

the failure to comply with the discovery rules as to the witnesses and the physical evidence would not be prejudicial to the defendant.

■ Failure of state Courts to comply with state law is not generally a basis for habeas corpus relief, absent a denial of fundamental fairness resulting in a violation of due process. *Woods v. Estelle,* 547 F.2d 269 (5th Cir. 1977); *Nordskog v. Wainwright,* 546 F.2d 69 (5th Cir. 1977). "The erroneous admission of prejudicial evidence can justify habeas corpus relief only if it is "material in the sense of a crucial, critical, highly significant factor." *Anderson v. Maggio,* 555 F.2d 447, 451 (5th Cir. 1977), quoting *Hills v. Henderson,* 529 F.2d 397 (5th Cir. 1976).

■ Since there is nothing in the record to support a claim of denial of due process, this issue does not state a Constitutional violation upon which relief can be granted.

■ King contends that he was denied a fair trial because the prosecutor, during selection of the jury, informed the prospective jurors that King had confessed his guilt to the police. (T/40–42).

The objected to remarks of the prosecutor were totally harmless in the context of this trial, in which the confession was later introduced into evidence in its entirety, and in which its validity was a major issue.

This voir dire did not have the effect, as claimed by King, of shifting the burden of proof to him.

As a final basis for relief, King argues that he was denied due process by questions asked by the prosecutor of Officer Goedecke, which allegedly had the effect of implying to the jury that two of King's friends had already confessed to their part in the crime.

■ On cross examination of Officer Goedecke, the defense sought to show that the police had originally questioned King two years previously and had been unable to establish his guilt when the evidence was fresh. (T/594–599). The defense questioned Goedecke in great detail to show

that the information obtained from King's confession was previously known to the police through the statement of Joseph McGowan. (T/611–627). The defense sought to show that McGowan had made his statement when threatened by Goedecke with electrocution. (T/628, 630–31).

On redirect examination, the prosecutor elicited testimony that two years before King's arrest the police had questioned not only King but also the co-defendant's Phillip Brannon Courtney and Jimmy Jacobs, who were subsequently identified by King in his confession as his accomplices. All three denied guilt at that time. (T/651–659). The clear tenor of this portion of the proportion of the prosecutor's examination was to rebut the implication by the defense that the officers had all of the information contained in King's confession before it was made.

The Court sustained an objection to the prosecutor's question whether Courtney or Jacobs had ever confessed. (T/660). A request for cautionary instruction was refused, with the Court noting that the question had resulted from the efforts of the defense on cross examination. (T/660).

The prosecutor then asked the question complained of in this petition:

Q: Officer Goedecke, have you beaten or forced or threatened Phillip Brannon Courtney or James Jacobs into giving you a confession?

A: No, Sir.

(T/660).

Defense counsel moved for a mistrial, which was denied. (T/660, 664–665). The Court stated that the prosecutor was permitted to inquire as he did in rebuttal of the defense contention that all of the information obtained from King was previously known to the state. (T/664).

The defense clearly opened the door to the line of inquiry pursued by the state. Further, there was no denial of due process in the context of this case, in which assuming that the jury did draw the inference speculated by the defense, it could have added very little to the evidence already before them.

No showing having been made that Dale James King is in custody in violation of the Constitution or laws of the United States, this petition must be denied, and a separate final judgment to that effect shall be entered.