**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Santos RUBALCAVA–MONTOYA, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Antonio SERRATO–BALTAZAR, Defendant-Appellant.**

**Nos. 77–3405, 77–3406.**

United States Court of Appeals, Ninth Circuit.

Aug. 22, 1978.

Rehearing Denied June 4, 1979.

George Benedict (argued), Eugene G. Iredale (argued), San Diego, Cal., for defendants-appellants.

Howard A. Allen, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Howard A. Allen, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before BARNES and KENNEDY, Circuit Judges, and BARTELS,* District Judge.

KENNEDY, Circuit Judge:

In this case the Government failed to establish either the legality of a search or that certain key testimony procured in consequence of this illegal government activity

* Honorable John R. Bartels, United States District Judge for the Eastern District of New York, sitting by designation.

was so attenuated from it as to be admissible. Application of the exclusionary rule requires that we reverse appellants' convictions. Each appellant was convicted on one count of conspiracy to transport aliens, 18 U.S.C. § 371; 8 U.S.C. § 1324, and on four counts of transportation of illegal aliens, 8 U.S.C. § 1324(a)(2).

On June 29, 1977 one Ventura arrived at the San Clemente checkpoint driving a car containing five illegal aliens, all of whom were concealed in the trunk. Appellant Rubalcava was among those hidden there. Appellant Serrato was the registered owner of the vehicle, but he was not present during the events in question. Border patrol agents stopped the car at the checkpoint and directed Ventura to a secondary area. There Ventura was recognized by agent Slocumb, who had arrested Ventura for smuggling aliens through the same checkpoint two weeks earlier. Slocumb advised agent Foster of these facts, and Foster approached the car to speak with Ventura.

The record is meagre at this critical point. There was testimony that Ventura left the car and walked slowly toward the trunk, his head down, with a "dejected, hangdog demeanor." The only further description of the circumstances of the search which followed is embodied in a portion of Slocumb's testimony:

> Defense Counsel: And there was a search of the trunk at that time, sir, when he came to the rear of the vehicle?
>
> Slocumb: The trunk was open [sic] and the evidence was taken into custody.

Record, vol. VII at 21. The "evidence" to which Slocumb referred was the five illegal aliens.

At trial on the conspiracy and transportation of aliens charges, three of the aliens found in the trunk testified that Rubalcava had arranged for their illegal entry, and that Serrato, the registered owner of the car driven by Ventura, was a conspirator and a principal in the illegal activity as well. Thereupon Ventura, who was a codefendant with Rubalcava and Serrato, took the stand and further implicated both of his codefendants. Appellants argued, and they reiterate on appeal, that evidence given by the officers regarding discovery of the illegal aliens and all of the testimony of Ventura and of the witnesses found in the trunk should be suppressed as the results of an illegal search. We agree.

The Government concedes that appellants have standing to object to the search. Serrato has standing by virtue of his ownership of the vehicle which was searched, *United States v. Mulligan,* 488 F.2d 732, 736–37 (9th Cir. 1973), and Rubalcava's standing arises from his having been, by consent of the owner of the premises or his agent, within the zone of privacy invaded by the search, *Jones v. United States,* 362 U.S. 257, 260–67, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). It is therefore proper for us to consider appellants' objections to the search and to use of the testimony obtained as a result of it.

 A checkpoint stop for brief questioning is lawful, but subsequent searches of the vehicle may be undertaken only if supported by probable cause or if proper consent for the search has been given. *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Ortiz,* 422 U.S. 891 (1975). To establish the legality of such a search, the Government has the burden of proving that one of these conditions was fulfilled. *See Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States v. Marshall,* 488 F.2d 1169, 1186 (9th Cir. 1973). Here the facts and conditions necessary to determine whether or not the search was lawful are simply absent from the record. That the defendant had previously been arrested for the same crime at the same place, and that he had a "dejected, hangdog demeanor" when he exited the car, are insufficient facts on which to base a finding of probable cause to search for evidence of a crime. Nor does the record disclose whether or not Ventura's exit from the car was voluntary or how the trunk was opened or who opened it. Neither consent nor probable cause was established. Since the Government has not proven otherwise, we must proceed on the

assumption that the search was conducted in violation of the fourth amendment.[1]

The Government nonetheless argues that even if the search were illegal, the testimony of Ventura and of the witnesses discovered in the trunk was so attenuated from the search that it cannot be considered an illegal fruit thereof. The Government's contention is that the testimony was the product of the volition of each witness, and that these independently significant acts intervened to break the causal link to the illegal search. We cannot agree.

■ In determining whether live witness testimony is " 'so attenuated [from an illegal search] as to dissipate the taint,' " *Wong Sun v. United States*, 371 U.S. 471, 487, 491, 83 S.Ct. 407, 417, 419, 9 L.Ed.2d 441 (1963), *quoting Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 103, 84 L.Ed. 454 (1939), the Supreme Court has rejected a per se rule of admission or exclusion even where a cause in fact relationship has been established. *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).[2] The Court held in *Ceccolini* that before testimony, as opposed to tangible evidence, will be excluded, a "closer, more direct link between the illegality and [live-witness] testimony is required." Although the sufficiency of the attenuation turns on the facts of each case, a key element is whether the testimony is the product of the witness'

independent act of will, neither coerced nor induced by the consequences of the illegal search. *Id.*

■ Nothing in the record of the case before us indicates that in the time between the search and the trial the witnesses made an independent decision to come forward to testify to rehabilitate themselves or to assist the trier of fact in arriving at the truth of the case, or for any other reason. The illegal aliens who testified against appellants not only were discovered as a direct result of the illegal search but were implicated thereby in illegal activity. The record does not show the substance or extent of any conversations or negotiations between the Government and the witnesses, and thus the Government has not rebutted the logical inference on these facts that the incriminating "evidence" discovered in the course of the illegal search was used to persuade these witnesses to testify. As to Ventura, the most reasonable explanation of his sudden decision to testify against his codefendants is that he admitted his guilt only because he saw that matters were going badly at trial. The probability that official government action, based principally on evidence provided by the search, induced Ventura's testimony suggests a close, direct link between the illegal search and the testimony used against appellants.

This case must also be distinguished from *Ceccolini* in that here there is no indication

1. In ruling that the search was lawful, the judge at the suppression hearing made a statement suggesting that although an officer lacked probable cause to search, nonetheless his good faith, subjective belief that existing circumstances endanger human life may justify a search:

> All we are going to have to do is someday leave about five aliens in the back of a car with a faulty exhaust and let it sit there about an hour with the motor running and you are going to have five people dead in the back of a car all because somebody thinks you should check the registration and get a search warrant, and so forth. These officers have a tough task. They are dealing with human beings, with lives. No question in this officer's mind, his sincerity, belief that there were aliens in the car and the sooner they get them out of there, the better they are going to be.

Record, vol. VII at 29. It is not even clear on the record before us who opened the trunk of the car, and we may not speculate about that fact, much less about the state of mind of whoever did open the trunk. The invitation to recognize that a policeman should be encouraged to act in emergency circumstances, and to accommodate such action by defining an exception to the exclusionary rule based on subjective intent is tempting. However, such a rule would be a clear extension of existing precedents, if indeed it would be justified at all. In any event, even assuming we were to accept the exception proposed below, the Government has not met its burden of establishing facts to support its application here.

2. In addition to the usual appellate hindsight, sharpened by a written transcript, in this case the *Ceccolini* decision, which had not been decided when the case was tried, gives us an additional advantage over the trial court.

that the connection between the crime and the witnesses would have been discovered from a source independent of the illegal search. *Compare id.* at 436 U.S. at 274–277, 98 S.Ct. at 1060, 55 L.Ed.2d at 276–277 (witness' relationship to defendant was well known to the investigating officers even before the search). It is because the search uncovered the crime itself in the process of commission that the illegal search, the testimony of the officers about the search, and the testimony of the witnesses are so closely, almost inextricably, linked.

Thus the relationship between the illegal search and the testimony challenged by the appellants is so immediate that we cannot find the attenuation necessary to hold the testimony admissible. We do not hold that in every case where an alien is discovered in the course of an illegal search he is necessarily disabled from testifying against persons who assisted his illegal entry. We do so hold on the facts of this case. Since the testimony we hold inadmissible under the exclusionary rule was the substantial basis of the Government's case, appellants' convictions must be reversed. The cases are remanded to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.