UNITED STATES of America

v.

CHUN Yen Chiu, Gi Hun Jen, An Di Li,
Chun Ming Li, Ming Shan Lu, Ai
Ming Yang, and Chao Young.

Crim. No. 93–289 (MLP).

United States District Court,
D. New Jersey.

Dec. 10, 1993.

**364**

Aidan O'Connor, Asst. U.S. Atty., Newark, NJ, for Government.

Michael Sullivan, Asst. Federal Public Defender, Trenton, NJ, for defendant Gi Hun Jen.

James F. Fine, Newark, NJ, for defendant Chun Ming Li.

Michael V. Gilberti, Budd Larner Gross Rosenbaum Greenberg & Sade, Short Hills, NJ, for defendant An Di Li.

Michael N. Pedicini, Morristown, NJ, for defendant Ming Shan Lu.

## MEMORANDUM AND ORDER

PARELL, District Judge.

This matter comes before the court on motion by defendants, Gi Hun Jen, An Di Li, Chun Ming Li and Ming Shan Lu, to extend the scope of this Court's prior ruling to suppress evidence seized as the result of the illegal search conducted at a warehouse located at 239 Barrow Street in Jersey City on May 24, 1993. Specifically, defendants move to suppress statements obtained from individuals found inside the warehouse, as well as any testimony by these individuals offered by the government at trial, on the basis that this evidence is directly or indirectly derived as the result of the illegal search conducted at the warehouse. For the following reasons, the motion is granted.

### FACTS

Most of the facts relevant to the determination of this motion are contained in a Memorandum and Opinion filed by this Court on November 23, 1993 857 F.Supp. 354 (94–151621).

On May 24, 1993, officers with the Jersey City Police Department illegally entered onto and into a warehouse located at 239 Barrow Street in Jersey City. The officers found approximately sixty-one individuals of Chinese descent inside the warehouse as a result of their illegal entry. In response to this discovery, the officers contacted the United States Immigration & Naturalization Service ("INS"). Several INS agents were sent to investigate the matter. The INS agents arrived at the warehouse and conducted an investigation there which revealed that the sixty-one individuals were illegal aliens from China. Based upon interviews with some of the individuals, the government received information to the effect that approximately fifty-seven of these individuals were being held inside 239 Barrow Street against their will until payment was made for their release and that at least four of the remaining individuals were responsible for maintaining order and preventing escape. These four remaining individuals are the defendants who have filed the instant motion.

Since the time they were discovered at the warehouse, the sixty-one individuals, with the exception of the four defendants herein, have either been detained by the INS or released on bail pending a deportation determination by the INS. However, on September 9, 1993, upon application by the government, material witness arrest warrants were issued for four of these individuals. The arrest warrants were issued on the basis that it was unlikely that these four individuals, if released on bail, would reappear to testify at the trial in this case or even that they could be located again.

To date, the government has produced the statements of fifty-six of the individuals found inside the warehouse and has indicated that it intends to introduce at trial the testimony of at least those four individuals who have been arrested as material witnesses.

### DISCUSSION

█ The exclusionary rule bars the admission of evidence which has been obtained as the result of an illegal search. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The rule operates to exclude not only physical evidence seized as the

result of an illegal search, but also evidence which is derived directly or indirectly as the result of an illegal search. *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267–68, 84 L.Ed. 307 (1939). Verbal evidence, including in-court testimony, which is derived directly or indirectly as the result of illegal conduct is no less subject to suppression than the more common tangible type of evidence. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Ceccolini,* 435 U.S. 268, 275, 98 S.Ct. 1054, 1059–60, 55 L.Ed.2d 268 (1978); *United States v. Scios,* 590 F.2d 956 (D.C.Cir.1978).

■ This Court has already determined that the entry onto and into the warehouse located at 239 Barrow Street was illegal. Prior to this illegal search, the police had no information indicating that there were illegal aliens inside the warehouse or that any criminal activity was going on inside the warehouse. The police had no information which would have otherwise led them to discover the illegal aliens at the warehouse. The fact that the police were assisting the telephone company to investigate suspected telephone fraud does not indicate that the police would have discovered those individuals inside the locked warehouse. Thus, the discovery, arrest and detention of the individuals discovered inside the warehouse were all a direct result of the illegal search conducted at the warehouse. Therefore, the statements and the proposed trial testimony of these individuals are the direct, or at least indirect, result of the illegal search. *United States v. Rubalcava–Montoya,* 597 F.2d 140, 143 (9th Cir. 1978); *United States v. Ramirez–Sandoval,* 872 F.2d 1392, 1396–99 (9th Cir.1989).

■ In opposition to defendants' motion, the government first argues that the exclusion of the testimony of these witnesses does not further the purpose of the exclusionary rule because these witnesses are "crime victims" and, thus, evidence of their statements and testimony should not be suppressed as tainted by the illegal search. In support of its argument, the government relies on *Satchell v. Cardwell,* 653 F.2d 408 (9th Cir. 1981). In *Satchell v. Cardwell,* the Ninth Circuit stated in a footnote that where evidence consists of the testimony of a rape victim, such evidence would probably not be excluded as the "fruit" of a poisonous tree:

> Where this court has suppressed [testimonial] evidence, the testimony was that of persons implicated in the criminal activity revealed by the illegal search; the court stressed that there was no indication that they would have come forward of their own volition or been discovered through another source. *United States v. Rubalcava–Montoya,* 597 F.2d 140, 143–44 (9th Cir. 1978). The situation is different where the witness was a brutally beaten multiple-rape victim who [probably would have been discovered]."

*Id.* at 410 n. 7.

The individuals here, whose statements and proposed trial testimony is at issue, are not the "victims" of crime in the sense that the rape victim referred to above would be viewed by a court. Rather, these individuals were at least to some degree *participants* in the criminal activity which was revealed by the illegal search. It was the illegal search which, in fact, led the authorities to discover that these individuals were being smuggled into this country as illegal aliens. In the absence of the illegal search, these witnesses would not have been otherwise discovered. This Court therefore rejects the government's characterization of these individuals as "victims" of crime as that characterization was contemplated by the Ninth Circuit in *Satchell v. Cardwell.* This Court further notes that, contrary to the government's argument, the court in *Satchell v. Cardwell* did not indicate that the exclusionary rule does not apply to the testimony of victims of crime, but rather the court indicated that it was more likely that such evidence would be found admissible under the attenuation theory or the inevitable discovery exception to the rule.

■ The government argues, in the alternative, that even if the exclusionary rule applies, evidence of the statements and the testimony of these witnesses is sufficiently attenuated from the illegal search such that this evidence should not be excluded. Where verbal evidence, whether in the form of state-

ments or in-court testimony, is obtained as the direct or indirect result of an illegal search, such evidence may nevertheless be admissible if the government can demonstrate that it "is so attenuated from the illegal search as to dissipate the taint." *United States v. Rubalcava–Montoya*, 597 F.2d 140, 143 (9th Cir.1978) (quoting *Nardone v. United States* 308 U.S. at 341, 60 S.Ct. at 267–68). "The 'attenuated basis' exception applies when the connection between the illegality and the challenged evidence has become sufficiently weak so as to dissipate the taint caused by the illegality." *United States v. Ramirez–Sandoval*, 872 F.2d 1392, 1396 (9th Cir.1989) (citing *Wong Sun v. United States* 371 U.S. at 488, 83 S.Ct. at 417–18). Thus, in order for this evidence to be admissible, the government must successfully demonstrate that the nexus between the illegality of the search and the evidence is so indirect or so weak that any taint caused by the illegality of the search should be absolved.

In *United States v. Rubalcava–Montoya*, 597 F.2d 140 (9th Cir.1978), illegal aliens were discovered in the trunk of the defendants' car as the result of an illegal border search. The trial court permitted the government to introduce the testimony of the illegal aliens that the defendants had arranged for their illegal entry and that the defendants had conspired to commit the criminal activity. The Court of Appeals for the Ninth Circuit reversed the trial court, stating that "[a]lthough the sufficiency of the attenuation turns on the facts of each case, a key element is whether the testimony is the product of the witness' independent act of will, neither coerced nor induced by the consequences of the illegal search." *Id.* at 143. The court went on to hold that because "the illegal aliens who testified against [the defendants] not only were discovered as a direct result of the illegal search but were implicated thereby in illegal activity," and "because the search uncovered the crime itself," and because the government did not rebut the logical inference on these facts that the witnesses were coerced or induced to testify, the testimony of these witnesses was too closely, almost inextricably, linked to the illegal search to be admissible. *Id.* at 143–44.

The facts of *United States v. Rubalcava–Montoya* are extremely similar to the facts of this case. The illegal aliens here were all discovered as the direct result of the illegal search of the warehouse. The identity of the witnesses and their relationship to the defendants was not previously known to the police, and would not have been discovered in the absence of the illegal search. In fact, it was this illegal search which uncovered the crime itself. Further, it is altogether logical to infer that these witnesses would not testify as a product of their independent will. Not only has the government failed to rebut this inference, but rather the government's actions in obtaining material witness arrest warrants for these witnesses strongly supports the inference that the testimony of these witnesses would not be an act of their independent will.

Therefore, because nothing in the record before this Court indicates that evidence of the statements or the proposed testimony of any of the illegal aliens discovered at the warehouse is sufficiently attenuated from the illegal search, or would inevitably have been discovered by the government absent that search, so as to purge this evidence of the taint of the search, this evidence is inadmissible against these four defendants under the exclusionary rule.

**IT IS**, therefore, on this 10th day of December, 1993, hereby **ORDERED** that the motion by defendants Gi Hun Jen, An Di Li, Chun Ming Li and Ming Shan Lu, to extend the scope of this Court's prior ruling to suppress evidence seized as the result of the illegal search conducted at a warehouse located at 239 Barrow Street in Jersey City on May 24, 1993, to include evidence of statements obtained from individuals found inside the warehouse, as well as any testimony by these individuals offered by the government at trial, is **GRANTED**.