56 F.3d 75
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Daniel SWEARINGEN, Jeffrey Scott Campbell, Kevin John
Ruska, Jr., Defendants-Appellants.
 Nos. 94-30202, 94-30215 and 94-30222.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 5, 1995.*
Decided May 18, 1995.
 
 Before: BROWNING, REAVLEY,** and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 On December 6, 1993, three or four men wearing black clothing and ski masks or face paint, each about 5'8" tall, robbed the Colonial Bank in Merlin, Oregon. The robbers left one fake gun at the scene of the crime. Witnesses reported that the suspects were last seen on foot headed toward Camp Joy Road. One witness reported a white Chevy Nova, probably a 1964 model, parked on Camp Joy Road. Three other witnesses described two vehicles in the vicinity which may have been getaway cars: a light colored tan or brown van, and a white 1960s model Chevy Nova. Two of the witnesses tried to follow the Chevy Nova from Camp Joy Road onto Plumtree Road, but could not.
 
 
 3
 Within ten minutes of the robbery, police spotted a white 1964 Chevy Nova driving at a normal rate of speed away from the general area of the robbery. Based on the estimated time and speed of the vehicle, the car could have been where witnesses last saw it on Camp Joy Road. Looking inside the car, police only saw the driver, Paul Swearingen, a white male who was not wearing black clothes, a ski mask, or face paint. However, police noticed a piece of light blue cloth hanging out from the trunk of the car. They also noticed that the car's back license plate was a generic "USA" plate, and that the car's front license plate was missing. After police trailed the car for about five minutes, Swearingen pulled over in a downtown church parking lot. Police turned on a patrol car's overhead lights, pulled out their guns and aimed at the Nova, and Swearingen exited the vehicle. Officers ordered Swearingen to place his keys on the roof of the car, put his hands up, face away from them, and back toward them slowly. Swearingen followed police instructions calmly and without evident surprise, fear, or anger. Police placed Swearingen face down on the cement, handcuffed him, then placed him in a patrol car. On the way to the patrol car, a police officer asked Swearingen, "Do you know what this is about?" Swearingen candidly replied, "Yes." Thereafter, police officers searched the car's passenger compartment, found nothing there, unlocked the trunk, and found the Colonial Bank money and Jeffrey Campbell, Kevin Ruska, and Matthew Hawk wearing black clothing and ski masks or face paint.
 
 
 4
 Police placed Campbell, Ruska, Hawk, and Swearingen under arrest. After being read their Miranda rights, each confessed to the crime. Pursuant to conditional guilty pleas, they were found guilty of conspiracy to commit bank robbery in violation of 18 U.S.C. Secs. 371 and 2113(a). Swearingen, Ruska, and Campbell now appeal.[1]
 
 
 5
 * Defendants argue that the district court erred by failing to suppress evidence obtained as a result of the stop and search of the white 1964 Chevy Nova Swearingen was driving.[2] Campbell argues that the police lacked reasonable suspicion to stop the car, while Ruska and Swearingen concede that the police had reasonable suspicion to stop the car, but argue that police lacked probable cause to search the car, including the trunk. Specifically, defendants point out, 1) at 5'3" tall, Swearingen was shorter than the description of the robbers and was not wearing black clothes, a ski mask, or face paint, 2) there is at least one other white 1960s model Chevy Nova in the area,[3] 3) the car was not observed on Plumtree Road when police drove past at the relevant time, 4) Swearingen drove at a normal rate of speed and did not try to evade the police, 5) the car did not sag as if it were carrying great weight in its trunk.
 
 
 6
 The district court found that there was both reasonable suspicion under Terry v. Ohio, 392 U.S. 1, 22-24 (1968), to stop the car and probable cause to search the car, including the trunk, pursuant to the automobile exception to the warrant requirement under California v. Acevedo, 111 S.Ct. 1982, 1991 (1991), and United States v. Bagley, 772 F.2d 482, 491 (9th Cir. 1985), cert. denied, 475 U.S. 1023 (1986).[4] We review this determination de novo. United States v. Huffhines, 967 F.2d 314, 316 (9th Cir. 1992).
 
 
 7
 The rule for determining whether the search of a car is valid is straightforward: "police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." Acevedo, 111 S.Ct. at 1991. Police need not obtain a warrant to search a vehicle if they have probable cause. United States v. Hatley, 15 F.3d 856, 858 (9th Cir. 1994). We have held that a defendant's "dejected, hangdog demeanor" and his prior arrest for the same crime at the same place did not suffice to establish probable cause to search a vehicle without a warrant. United States v. Rubalcava-Montoya, 597 F.2d 140, 142 (9th Cir. 1978). However, we have also held that where a witness to a crime identified the car as the gateway vehicle and sunglasses similar to those worn by the robber were visible on the front seat of the car, police did have sufficient evidence to establish probable cause to search and seize the vehicle without a warrant. Bagley, 772 F.2d at 491.
 
 
 8
 In the instant appeal, reasonable inferences based on the evidence at hand established probable cause. Police knew from independent witnesses that a white 1964 Chevy Nova had been seen near the crime and was suspected of being a getaway car. A white 1964 Chevy Nova was a very rare car in that area of Oregon. The timing, distance, speed, and direction of the car all comported with its leaving Camp Joy Road when witnesses last saw it there. The robbers were last seen on foot headed toward Camp Joy Road. The Nova lacked a front license plate as if someone may have removed it to diminish the possibility of detection. When ordered to surrender at gunpoint, Swearingen reacted with no surprise, anger, or fear, unlike most innocent people who are stopped by police in this manner. A piece of light blue cloth hung visibly from the trunk of the car, as if the trunk may have been hastily closed. Experience and training taught the officers that the trunk of a car can harbor dangerous confederates.
 
 
 9
 The evidence in this case was as weighty as the evidence in Bagley. There, police were faced with a vehicle a witness identified as the getaway car used in a robbery and circumstantial evidence that implicated the driver of that car (similar sunglasses on the car seat). Here, police were faced with what was almost certainly the getaway car used in a robbery, and circumstantial evidence implicating the driver of that car (cloth hanging out of the trunk of the car and Swearingen's unusual behavior upon existing the car at gunpoint). Unlike in Rubalcava-Montoya where police only had a prior arrestee with a general "hangdog demeanor," police in this case had ample, specific evidence to believe that contraband or other evidence of the robbery (including defendants themselves) was probably contained somewhere in the white 1964 Chevy Nova. The trunk of the vehicle seemed the most probable place.[5] The stop and search of the car, including the trunk, was supported by probable cause and the district court's denial of the motion to suppress its contents, therefore, was not erroneous.[6]
 
 II
 
 10
 Defendants also challenge the legality of Swearingen's arrest. They argue that when Swearingen was forced to lie on the ground at gunpoint, and was handcuffed and taken to the patrol car, he was arrested. Defendants argue, therefore, that police were obligated to read Swearingen his Miranda rights before they asked him the question, "Do you know what this is about?" The government counters, and the district court held, that Swearingen was initially detained pursuant to a legitimate investigatory stop, and that he was not arrested until police discovered the other defendants in the trunk and they were all read their Miranda rights.
 
 
 11
 When exactly Swearingen's detention for the purposes of an investigatory stop converted into a full felony arrest is a question we need not resolve. Assuming that Swearingen was arrested when he was handcuffed and taken to the patrol car, the arrest and car search were independently supported by probable cause, so Swearingen's answer to the question "Do you know what this is about?" before he was read his Miranda rights is of no import.
 
 
 12
 A police officer must have probable cause to make an arrest. United States v. Pinion, 800 F.2d 976, 979 (9th Cir. 1986), cert. denied, 480 U.S. 936 (1987). The validity of an arrest turns on whether the arresting officer "had reasonably trustworthy information [] sufficient to warrant a prudent person in believing that the suspect had committed [] an offense." Id. Our probable cause analysis of the search of the Chevy Nova applies with equal force to Swearingen's alleged arrest. Based on the evidence police gathered and observed before they handcuffed Swearingen and took him to the patrol car, a reasonably prudent person would believe that Swearingen was probably involved in the robbery. The arrest, therefore, was supported by probable cause.
 
 
 13
 That a police officer asked Swearingen if he knew what the arrest was about without first reading him his Miranda rights is of no import as it caused him no detriment. As we have held, the police in this case had probable cause to search the vehicle independent of Swearingen's answer to that question. We therefore need not review the district court's holding that Swearingen's answer to the question was admissible under the "public safety" exception to Miranda. New York v. Quarles, 467 U.S. 649, 655-56 (1984); United States v. Brady, 819 F.2d 884, 887 (9th Cir. 1987).
 
 III
 
 14
 Campbell alone finally challenges the district court's decision to allow police officers at the suppression hearing to take the stand, acknowledge the government's written statement of facts and the police reports attached as exhibits, and adopt that hearsay as testimony. Campbell argues that this procedure violated various Federal Rules of Evidence and his constitutional right to due process protected under the Fourteenth Amendment. A court's decision to admit evidence under exceptions to the hearsay requirement is reviewed for an abuse of discretion. United States v. Bland, 961 F.2d 123, 126 (9th Cir.), cert. denied, 113 S.Ct. 170 (1992).
 
 
 15
 Though the Federal Rules of Evidence generally apply at pretrial suppression hearings, United States v. Brewer, 947 F.2d 404, 410 (9th Cir. 1991), "the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." United States v. Matlock, 415 U.S. 164, 172-73 (1974) (footnote omitted). See also United States v. Whitten, 706 F.2d 1000, 1019 (9th Cir. 1983). A judge may consider hearsay evidence to determine if probable cause existed to arrest a defendant. Matlock, 415 U.S. at 175. The hearsay evidence of the written statement of facts in this case, submitted to show the existence of probable cause to search the car and arrest the defendants, therefore was admissible. The district court did not abuse its discretion in considering this hearsay testimony at the suppression hearing.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Thomas M. Reavley, Senior United States Circuit Judge, Fifth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Matthew Hawk does not appeal
 
 
 [2]
 The government argues that Campbell and Ruska lack standing to challenge the stop and search of the car because they did not have a "legitimate expectation of privacy" in the trunk in which they were locked. Rakas v. Illinois, 439 U.S. 128, 143 (1978). We need not reach this issue. We hold that the search of the car was supported by probable cause, so even if Campbell and Ruska had standing to challenge the search of the trunk, their challenge would fail on the merits
 
 
 [3]
 A police officer knew of one other white Chevy Nova in the area, but recognized that the car Swearingen drove was not the same one because of its missing front license plate
 
 
 [4]
 In the alternative, the district court found that the search of the car was justified as a protective sweep incident to a lawful arrest under Michigan v. Long, 463 U.S. 1032, 1949-50 (1983). We do not review this finding, as we hold that the search was independently justified by probable cause
 
 
 [5]
 Swearingen's answer to the question, "Do you know what this is about?" plays no part in our analysis. We hold, as did the district court, that police had probable cause to search the car independent of Swearingen's answer
 
 
 [6]
 Campbell also challenges the district court's decision not to suppress his confession to police after he was read his Miranda rights because that confession was the fruit of an illegal search. Wong Sun v. United States, 371 U.S. 471, 485 (1963). Because we conclude that the search was supported by probable cause, this argument has no merit